## CHARLIE JONES v. THE STATE.

### No. 2620.   Decided January 28, 1903.

**1.—Defendant as Witness—Cross-Examination.**

The defendant, who is a witness on his trial for murder, may, on his cross-examination, be required to state if he had not at one time been arrested for abducting a child. The abduction of a child would involve moral turpitude, and such evidence is admissible as affecting the credibility of the witness.

**2.—Murder—Evidence as to the Locus.**

On a trial for murder it was competent, under the circumstances of the case, to prove that the homicide was committed in a whorehouse.

**3.—Same—Argument of Counsel.**

On a trial for murder where the State's counsel made unwarranted allusions to defendant's character, the same being provoked by and in response to the argument of defendant's counsel, did not constitute reversible error.

**4.—Same—Unwarned Confession.**

On a trial for murder, where it appeared that defendant had surrendered himself to the sheriff, but the latter had not formally arrested him; Held, the sheriff not having warned him, it was inadmissible to prove his state-

ments and confessions made to the sheriff; the defendant being conscious of his arrest, although no formal announcement of that fact had been made to him by the sheriff.

**5.—Same—Self-Defense—Charge.**

On a trial for murder, where it appeared that defendant, after having shot down the deceased, picked up deceased's pistol and fired another shot into him, and the court charged the jury that if defendant, when he fired the first shot, knew he was in no danger, they should convict of murder or manslaughter; Held, the court should, under the circumstances of the case, have charged the converse of the proposition, to the effect, that if defendant believed he was in danger, and that the danger was continuing, he would have the right to continue to shoot.

**6.—Same.**

Where, on the issue of self-defense, the court, in the charge, authorized an acquittal if defendant believed that his life and that of the other occupants of the house was threatened with danger "or great serious bodily harm;" Held, that the use of the word "great," in connection with "serious bodily harm," was error.

Appeal from the District Court of Caldwell. Tried below before Hon. L. W. Moore.

Appeal from a conviction of murder in the second degree; penalty, seven years imprisonment in the penitentiary.

The indictment charged appellant with the murder of Dan. Roberts, on the 13th day of July, 1902, by shooting him with a gun.

Dan Roberts, the deceased, was a white man; defendant, Charlie Jones, is a negro. It was proved that the house in which the killing occurred was a negro whorehouse where three or four women stayed, and where defendant also stayed. On the Saturday night before the killing the deceased with some friends went to the house, and deceased took Annie Pearce, one of the inmates, from the house, the defendant being in the house at the time. Deceased pointed his pistol at defendant, and told him if he ever said anything about his coming up there he would kill him. Complaints were made by the women against deceased and his friends for the disturbance they had created on Saturday night, and defendant made a complaint against Dan Roberts for carrying a pistol. This caused deceased to threaten defendant, and defendant sought advice from a lawyer as to his rights of protection for himself and the women.

On the night of the killing, deceased, Dan Roberts, and three companions went to the house and deceased demanded admittance, which being refused by Henrietta Allen, who kept the house, he broke the door open, and, coming in, struck Henrietta Allen, who was endeavoring to strike a match, over the head with his pistol. Defendant, who was in the room, shot him with a Winchester rifle, which got out of fix, and he fell on the floor. His companions, from the outside, fired at the house. When deceased fell he dropped his pistol, and defendant, having secured it, shot deceased through the head again with it while he was lying upon the floor and killed him.

The other matters presented in this appeal can be gathered from the opinion.

*McNeal & Ellis,* for appellant.

*Rob't A. John,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of murder in the second degree, and his punishment assessed at confinement in the penitentiary for a term of seven years; hence this appeal.

Appellant objected to the testimony elicited from him on cross-examination by the State to the effect that he had been arrested in Lockhart, and carried back to Bastrop County, on the charge of having abducted a minor child. He objected to this on the ground that it was immaterial to any issue in this case, and calculated to injure and prejudice him before the jury. Felonies and misdemeanors which involve moral turpitude are provable against witnesses on cross-examination as affecting their credibility. We take it that abduction of a minor under our statute (articles 630-632, Penal Code) would involve moral turpitude. The evidence was therefore admissible.

We think it was competent to prove the character of the place where the homicide is said to have occurred, under the circumstances of this case, and, if witness knew that it was a whorehouse, he could testify to this.

The bill of exceptions prepared by appellant shows an unwarranted allusion by State's counsel to appellant's character. However, the court explains this by showing that "appellant's counsel brought this on himself by alluding to the failure of the State to prove certain facts, and what was said by the district attorney was in response thereto. From this it appears that appellant did, through his counsel, refer to this matter, and ask why the State did not prove that appellant was a bad man, and had been indicted for killing people," etc. We think the State, in reply, proceeded to a great extent on this subject, but we are not prepared to say that counsel was not justified in doing so.

The State introduced Sanders as a witness, who testified that he was sheriff of Caldwell County at the time of the killing of Dan Roberts, for which appellant was indicted. On the night of the killing, and thereafter, about 12 o'clock, defendant came to the house of witness, and inquired for him. Witness was down in town. His wife telephoned to him that defendant was there. Witness telephoned back to have defendant saddle up his two horses, and bring them down town to him. Witness and his son Jess met appellant on the corner of the square. The State then proposed to prove by witness appellant's confession to the sheriff, to which defendant objected on the ground that the sheriff had not warned appellant. The question was then put to the witness whether or not he had arrested defendant at that time, to which he answered that he had not. Witness was then permitted to testify that appellant, when he came up to him, handed him his pistol, and said it was the pistol of deceased, Dan Roberts; but said that said parties had come up to the house, and that Dan Roberts had broken in the house, and hit his woman over the head, and that he had killed deceased; that he shot him once with his winchester, and then shot him with deceased's

pistol. And defendant at the time objected to such testimony, because the statement was made while appellant was under arrest, and in the custody of the sheriff, and that he had not previously been warned by such officer; and that for those reasons the testimony was inadmissible against him. This occurred on the night of the homicide, and immediately thereafter. Appellant, who had just shot deceased, went to the house of the sheriff, and inquired for him. He was informed by the sheriff's wife that the sheriff was in town, and that he had telephoned to her to have appellant saddle his horse, and bring it to him, which appellant did. He came to him, and gave him his pistol. But it does not appear from the bill that there was any formal arrest at the time. Evidently appellant sought the sheriff for the purpose of surrendering to him, and he did all that was in his power to place himself in the custody of the sheriff. He surrendered his pistol to him, and then, as it appears, told the sheriff what he had done. It occurs to us that, whether the sheriff, in a formal manner, told defendant he was under arrest or not, the effect was the same. Appellant had surrendered to him, evidently on account of the homicide. In Nolen's case, 9 Texas Crim. App., 419, there was no formal arrest, and the court below seemed to predicate its admission of the testimony on the proposition that defendant did not intend, or even suspect, that he was regarded by Shain (who was a member of the State troops) as a prisoner, or in his custody. But this court reversed the case on this account, believing the evidence showed an arrest, and that defendant was conscious of it. The only difference between that case and the one at bar is that the parties had pursued defendant Nolen, while here appellant came to the sheriff, and placed himself in his custody. His evident purpose in going to the sheriff was to surrender, and when the sheriff took his pistol he was completely within his power. While the sheriff does not testify that he would not have permitted appellant to have gone at large, we know as well as if he had so testified that he would not have permitted it. Here appellant was conscious of his arrest, although no formal announcement of that fact was made by the sheriff; and the testimony of his confession should not have been admitted against him. Craig v. State, 30 Texas Crim. App., 619.

Appellant requested the following charge: "If the jury find from the evidence that after defendant first shot deceased, if you so find, he (defendant) was in a room, and his gun was caught, and failed to fire again, and the house he was in had been fired into by other parties, there in company with deceased, and defendant, under the facts, picked up the pistol of deceased, and, hearing a noise, and believing he was in danger, fired another shot into deceased after he was down, in a room that was dark to such an extent that defendant could not know fully his danger from attack by the companions of deceased, then such shooting would not be murder, and you should acquit defendant of murder under such facts." This charge was refused, and exception reserved. Appellant insists that, under the circumstances of this case, and espe-

cially as the court charged in favor of the State on the facts, this charge, or one similar to it, should have been given. The court, among other things, instructed the jury as follows: "If you believe from the evidence that deceased did go to the house where this defendant lived, and did, without the consent of the party controlling the house, break into such house, * * * and defendant did shoot deceased without killing him, but afterwards did shoot and kill the deceased, if at the time he was disarmed, and incapable of doing any harm to the defendant, or any inmate in said house, and these facts were then known to defendant, then he would not be justified or excused in killing deceased; and, if you so believe from the evidence, then you should convict of either murder in the second degree or manslaughter, as you may find under all the facts and circumstances in proof, according to the instructions given you." We think, in view of appellant's own testimony, the requested charge was authorized, and it was particularly required when the court gave the State's theory on its view of the case, as indicated above. The court instructed the jury, if, when he fired the first shot he knew that he was in no danger, to convict him of either murder or manslaughter. This was a proper charge on the part of the State, but then the converse of the proposition should have been given; that is, if appellant did not know that his danger had ceased, but reasonably believed that it was continuing, under such circumstances he would have the right to continue to shoot.

Appellant also complains of the court's charge on self-defense, to wit, that he authorized the jury to acquit defendant if he believed, at the time of shooting deceased, that either he or the occupants of the house were then and there threatened with danger to his or their lives, or great serious bodily harm, then he would be justified. The contention is that, if appellant apprehended serious bodily harm, it was enough; and the court had no right to add to his burden by introducing another adjective, and requiring the jury to believe that he was in peril of great serious bodily harm. We do not believe that it was proper for the court to have added to appellant's burden in this respect.

For the errors discussed, the judgment is reversed, and the cause remanded.

*Reversed and remanded.*