## WILL GRANT v. THE STATE.

### No. 4034. Decided June 2, 1909.

**1.—Murder—Evidence—Declarations of Defendant—Arrest.**

Where upon trial for murder it was manifest that there was at the time of defendant's statement to the officer no actual exercise of authority or control by the officer over the defendant, and defendant's statement conveyed the idea that he thought the offense was of a trivial nature, and there was no cause for immediate arrest; that the same was voluntarily and freely made; and the bill of exceptions did not show when in fact the arrest was made, there was no error in admitting the said statement in evidence.

**2.—Same—Evidence—Cross-Examination.**

Where upon trial for murder there was testimony that the deceased had thrown a box of axle grease at the defendant, there was no error to permit the State to introduce testimony as to the condition and consistency of the axle grease at the time of the homicide, to show that if the same had been thrown at defendant with sufficient force to knock him off his horse that the contents of the box would have been disarranged.

**3.—Same—Charge of Court—Words and Phrases.**

Where upon trial for murder the evidence showed that the defendant hit and stamped the deceased, there was no error that the court used in his charge the words stamping, kicking and beating the deceased.

**4.—Same—Charge of·Court—Instrument and Means Used—Intent.**

Where upon trial for murder the court in his charge, in submitting article 717, Penal Code, used the words, "and the surrounding circumstances at the time," the same was reversible error, as this language was not contained in substance or effect in said statute, and went beyond the same; especially where the defendant requested an additional correct instruction, applicable to the facts, as to the means used and intent of the defendant in committing the homicide.

**5.—Same—Charge of Court—Burden of Proof—Aggravated Assault.**

See opinion for court's criticism on a charge of aggravated assault which was inaptly drawn, and rather tended to place the burden of not guilty on the defendant.

**6.—Same—Charge of Court—Simple Assault. .**

Where upon trial for murder, resulting in a conviction of manslaughter, the evidence showed that the assault resulted fatally, etc., there was no error in the court's failure to charge on simple assault.

Appeal from the District Court of Collin. Tried below before the Hon. J. M. Pearson.

Appeal from a conviction of manslaughter; penalty, three years imprisonment in the penitentiary.

The opinion states the case.

*Smith & Wilcox* and *Abernathy & Abernathy,* for appellant.—On question of arrest: Cases cited in the opinion. On question of court's charge on instrument and means used in the homicide: Thomson v. State, 49 Texas Crim. Rep., 384; 93 S. W. Rep., 111; Hardin v. State, 51 Texas Crim. Rep., 559; 103 S. W. Rep., 401; Griffin v. State, 40 Texas Crim. Rep., 312; 50 S. W. Rep., 366; Shaw v. State, 34 Texas Crim. Rep., 435; 31 S. W. Rep., 361. On question of simple assault: Hill v. State, 11 Texas Crim. App., 456; Peacock v. State, 52 Texas Crim. Rep., 432; 107 S. W. Rep., 346.

*F. J. McCord,* Assistant Attorney-General, for the State.

RAMSEY, JUDGE.—Appellant was indicted in the District Court of Collin County on the 14th day of September, 1907, on a charge of murder, alleged to have been committed on the 13th day of July of the same year. On trial he was found guilty of manslaughter, and his punishment assessed at confinement in the penitentiary for three years.

The appeal raises a great number of questions, some of which are not without interest and difficulty. Many questions are raised touching the action of the court in reference to empaneling the jury, consisting of motions to quash the venire, the refusal of the court to compel the attendance of defaulting veniremen and other matters. The bills of exception touching these matters cover many pages of the record, and much attention is devoted to their consideration in the brief of counsel for appellant. These are all matters not likely to arise on another trial, and we do not feel called upon to discuss them. The case was tried right at the close of the term, and the action of the court in respect to some of the matters was induced and probably justified by the imperative necessity of closing the case before the term was compelled to adjourn by operation of law. The facts in the case are somewhat circumstantial, though there were two witnesses who saw appellant as in the act of striking some one on the ground at quite a distance from the scene of the homicide. To a large extent the incriminating facts rest upon the declarations of appellant made to various persons. It seems that the deceased was a man fifty years of age or more, of slight build and somewhat infirm in health. The appellant was a youngish man, quite six feet tall, and weighing, as he himself states, one hundred and sixty-three pounds, and, as stated by other witnesses, in the neighborhood of two hundred pounds. At the time he was killed deceased was en route from the little town of Prosper to his home, traveling in a wagon drawn by two mules, and accompanied by his little

sons, one about eight years of age and one younger. He, as well as appellant, had been in Prosper during the day of the killing, and, so far as the evidence shows, there had been on that day no matter of controversy between them. The evidence tends to show that appellant overtook deceased, who was also going in the general direction of where he lived, appellant riding horseback. According to his statement made to several witnesses, appellant spoke to deceased, who replied in anger, and threw a box of axle grease at him, striking him in the face, and, as he says, knocking him from his horse. Thereupon he jumped into the wagon where deceased was, and engaged in a fight or scuffle, during which both fell out of the wagon in front, and the wagon went over them, and that he struck deceased several times and also kicked him several times. Deceased at the time, as appellant says, was holding to his trousers and seeking to arise from the ground. Almost immediately after the difficulty appellant left the scene of the encounter, and met a couple of neighbors, to whom he reported the incident of his fight with Hamilton, and suggested that they go and see after him, and particularly the little boys who were in the wagon with him when the team ran away. He continued his journey thence to the little town of Prosper, where he hunted up one Edwards, a local officer, and told him he had had a fight with Hamilton, and wanted to pay his fine. This officer declined to take the money, but said to him he would investigate the matter before taking action with respect thereto. When found the deceased had some wounds about his head and some four or five ribs broken, two on either side, corresponding almost exactly as to their location. The physician summoned testified that Hamilton died from a shock, and that a shock from a blow would or might account for his death. The testimony tended to show that none of the wounds were of a character necessarily sufficient to produce death, and the statement of the physician is quite reasonable in itself that the death resulted from a shock. There was some evidence tending to show that the broken ribs might have resulted from the deceased being run over by the wagon, and it is also not improbable that they may have been broken by the kicks admitted by appellant. There was high weeds growing on either side of the road where the killing occurred, and the place was perhaps as secluded a spot as there was anywhere in that neighborhood. The deceased was shown by considerable testimony to have been a quarrelsome man, and to have been engaged in a great many difficulties, of no very great importance, however, with many of his neighbors.

1. Among other questions relied on for reversal was the action of the court in admitting in evidence the declaration and statement of appellant to the witness Edwards. This witness testified that he was deputy sheriff, and lived at Prosper, and that defendant came to him on the evening of the homicide and offered to pay his fine, but that he would not accept same, and told defendant he would investigate the matter. Thereupon, the bill recites, counsel for State propounded the question:

"Did he say anything to you there about what happened?" and the witness having answered, "Yes," they pressed the further question upon him, "What did he say?" to which question and answer sought to be elicited thereby counsel for appellant objected, because such statement as he might make would be incompetent under the statute, because he is shown to be under arrest, and in the presence of the officer, and that he had gone to give himself up to such officer. Thereupon counsel for the State propounded the question, "At the time he made this statement did you have him under arrest?" to which witness answered, "No," and thereupon counsel for the State propounded the further question, "Did you arrest him afterwards?" to which witness answered, "Yes," and thereupon witness testified further that appellant had come to him to pay his fine, but he told him he would have to see about it, when again, in the same connection, the State propounded the question, "What did he say to you there?" to which question and the answer sought to be elicited thereby counsel again objected for the reasons named above, and because it was a statement made while under arrest, and was not taken down in the manner required by statute. These objections were overruled, and the following questions were permitted to be asked and the answers permitted to be given: "Q. Before you arrested him, now, tell what statement he made to you there? A. He stated that he and Mr. Hamilton had had a fight. Q. Tell all that he said? A. He said that he had started home, and passed old man Hamilton, and spoke to him, and the old man swore, and said, 'I told you not to speak to me any more,' and stooped down in the wagon and picked up a box of axle grease, and threw it at him, and hit him, and knocked him off his horse, and he said he got up in the wagon and jumped on him, and they fell out of the wagon, and he said they had a fight there. Q. What did he say he did to him? A. He said he knocked him, and kicked him, and left him there. Q. Anything else besides kicking him? A. No. Q. Knocked him and kicked him? A. Knocked him and kicked him—yes. Q. Well, did he say anything else about doing anything else to him—whether he was on him or not? A. No, he didn't say anything about being on him. Q. How long did he say he knocked him and kicked him? A. I says to him, 'You haven't killed the old man, have you?' and he says 'No,' and I says, 'I will have to see about it.' He had the money out to pay his fine, and I says, 'No, I will have to see about it, and investigate it a little before I could take the money.'" It will be noticed, by reference to the bill, that it is not disclosed when the arrest, in fact, was made, or what length of time intervened between the making of the statement above recited and the actual arrest. Appellant in this connection relies upon and cites the case of Jones v. State, 44 Texas Crim. Rep., 405; 71 S. W. Rep., 962, and Nolan v. State, 9 Texas Crim. App., 419. This question has been before this court very often, and there is some little confusion in the cases. An inspection of the opinions of the court, however, will disclose that there is not any real conflict in them, and

that, when tested by the facts of each case, the rule is clear. We think the facts of the case under consideration are more like the facts of the case in Craig v. State, 30 Texas Crim. App., 619. Here it is manifest that there was, at the time the statement was made, no actual exercise of authority or control by Edwards over appellant. Appellant's statement is consistent with the idea that he thought his offense a trivial and unimportant one, and the declaration of the officer is consistent with the idea that it was no case for immediate arrest. It is not shown by the bill when, in fact, he was arrested. The statement seems to contain intrinsic evidence of the fact that it was voluntarily and freely made, under no compulsion, persuasion or duress. It is wholly wanting in all the essentials of a statement made while under arrest.

2. On the trial the State offered in evidence testimony of this same witness, Edwards, to the effect in substance that, at the habeas corpus trial, a short time after the homicide, the axle grease contained within the box had on it distinctly the letters "Waters Pierce Oil Company, Golden Axle Grease," corresponding to the print of the letters on the top. This axle grease, at the time of the homicide in July, was shown to have been of a substance or consistency like butter, and the State's theory was undoubtedly that if this box of axle grease had been thrown at appellant, and had struck him with sufficient force to knock him off of his horse, that the contents of the box would have been confused and disarranged by the impact of such a blow. The objections were that there was no evidence as to what its condition was at the time it was picked up, and there was no evidence as to the position of the box when it was carried into court, or that it was kept in the same position; and besides, it was of a nature which would adapt itself to any position in which it was placed. We think these were proper matters of argument to the jury, and would perhaps have some effect as affecting the weight of the testimony, but it did not, as we believe, render it inadmissible.

3. Again, objection is made to several paragraphs of the court's charge, including the 11th, 17th and 21st, on account of the court using the word "stamping" as a means of committing the injury, and it is insisted that there is error in the 17th paragraph of the court's charge, where the court instructs the jury: "If you believe from the evidence, beyond a reasonable doubt, that the defendant, by *stamping,* kicking and beating deceased," etc. This criticism is made with the statement that there was no evidence that the defendant stamped deceased. In this contention counsel are not wholly borne out by the record. The witness Maynard, in his testimony, among other things, makes the following statement: "I don't remember exactly what he said he done to him, but he said he kicked him and stamped him, or something that way; I wouldn't say just what words he used for certain." In any event, the use of this word is but another form of expressing the idea that appellant kicked deceased, and in view of all the testimony

that deceased was on the ground, and appellant standing up, the use of the word was not subject to serious criticism.

4. We think, however, the case must be reversed on account of the following charge of the court. In paragraph 15 of the court's charge the jury were thus instructed: "The instrument or means by which a homicide is committed are to be taken into consideration in judging the intent of the party offending. If the means be such as are not likely to produce death, it is not to be presumed that death was designed, unless from the means adopted, and the surrounding circumstances at the time, such intention evidently appears." It was undoubtedly the purpose of the court to give in charge to the jury, as indeed he was required to do, article 717 of our Penal Code. This article is as follows: "The instrument or means by which a homicide is committed are to be taken into consideration in judging of the intent of the party offending; if the instrument be one not likely to produce death, it is not to be presumed that death was designed, unless from the manner in which it was used such intention evidently appears." It will be noticed that the phrase "and the surrounding circumstances at the time," contained in the court's charge, are not either in substance or effect contained in the statute. As we understand, and such from the beginning has been the construction placed upon it, where the instrument or means by which a homicide were committed are not of a character likely to produce death, the law presumes, and the jury must be so instructed, that death was not designed, unless from the *manner* in which same was used such intention evidently appears. The instruction of the court goes beyond the law, and tells the jury that the intention of appellant is to be determined not alone by the *manner* in which the means or instrument of the assault was used, but all the surrounding circumstances at the time. This would authorize the jury to consider the relative size of the parties, the disparity in their ages, the secluded spot, the antecedent grievances, the nature of the wounds, the presence of the little boys, the fact that he was assaulted and driven from his own wagon, and indeed having in mind the facts of the case, to look not only to the manner in which the assault was made, but to all the facts, and every fact, to determine the intention and purpose of appellant. It is always unsafe, when the court is undertaking to give in charge a statutory provision favorable to appellant, to undertake to depart from its plain language. If the charge of the court had stood alone, and no additional instructions had been asked, it is not certain that we might not, with some reason, be appealed to to hold the error not necessarily harmful, but appellant, with a view of correcting, as far as might be, this error, after the court had read its main charge to the jury, requested the following special instructions: "If the jury should find and believe from the evidence that the deceased was killed while engaged in a fight with the defendant, by the defendant striking with his fists and kicking with his feet the said deceased, and that the means

used was not likely to produce death, then the jury are instructed that it can not be presumed that death was designed or intended by the defendant, from the mere fact that deceased was killed, unless from the nanner in which defendant hit and kicked said deceased such inten-'tions evidently appeared." "If you should find and believe from the evidence that the means or instrument used by the defendant Grant in the difficulty was not likely to produce death, then in that event, before you can find the defendant guilty of any grade of felonious homicide, you are required to find that, from the manner of the use of said means, t was the evident intention of the defendant to take the life of Hamlton, and you are instructed that, in case of a reasonable doubt as to any fact, you will give the benefit of the doubt to the defendant." This was a vital matter to appellant. The testimony strongly supports the issue that, whether justifiable in his assault on deceased or not, it was not his intention to kill him, and we are, ourselves, strongly impressed from the record with the truth of this contention. His conduct and demeanor is consistent with his belief that he had not seriously injured deceased, at least that he had not mortally injured him. The means used were not of a character ordinarily likely to produce death. In this condition of the record it was important to appellant that he should receive a correct instruction and a fair and correct application of the law to these facts. This, as we believe, he did not receive in the charge of the court, and we believe further that, in view of the facts of this case, that the court should have given the special charges above quoted.

5. In view of another trial we call attention to the criticism of the 31st paragraph of the court's charge. The entire paragraph is as folows: "Or if you find and believe from the evidence that the defendant is guilty of some grade · of offense, but you have a reasonable doubt whether or not he is guilty of some grade of homicide, or is guilty of an aggravated assault, then you are instructed that you must give the defendant the benefit of the doubt, and you could not find him guilty of a higher grade of offense than of aggravated assault, if you find him guilty of that. Or if you find and believe from the evidence that the defendant was not guilty of any offense, you will return a verdict of not guilty." It is complained that by the language, "or if you find and believe from the evidence that the defendant was not guilty of any offense you will return a verdict of not guilty," the burden was placed on the defendant to show that he was not guilty before the jury would be authorized to acquit him. This portion of the charge is not very aptly framed, and is due, no doubt, to haste in its preparation and inadvertence, and can easily be corrected.

6. Complaint is made that the court erred in failing to submit the issue of simple assault. We think, in view of the circumstances, and having in mind the fatal injury as it happened, that the court was not called upon to submit a charge upon the issue of simple assault.

7. There are a great many other questions raised on the appeal, but

we do not believe there was any error in respect to any of them, and that they are not of a character that seem to require discussion.

For the error pointed out the judgment is reversed and the cause is remanded.

*Reversed and remanded.*