**BERNARD'S, Inc., v. AUSTIN.** (No. 9979.)

Court of Civil Appeals of Texas. Dallas. Oct. 8, 1927.

Rehearing Denied and Hearing on Appellee's Motion for Additional Findings of Fact, Dec. 10, 1927.

**1. Witnesses ⊜⟹345(1)—Witness may be impeached by proof of his previous conviction of crime.**

A witness may be impeached by proof that he has been convicted of a crime, and impeachment is not limited to proof of his general reputation for truth and veracity.

**2. Witnesses ⊜⟹350—In impeaching witness, conviction for receiving stolen property is provable by cross-examination, without producing record of conviction.**

In impeaching a witness, his conviction for receiving and concealing stolen property may be proved by cross-examination, without producing the record of conviction.

**3. Witnesses ⊜⟹345(4)—That witness has been pardoned does not make impeaching evidence of conviction for receiving stolen property inadmissible.**

The fact that a witness has been pardoned does not make evidence of his conviction for receiving and concealing stolen property inadmissible for purposes of impeachment.

---

⊜⟹For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**4. Witnesses ⟺345(1)—In determining whether conviction was too remote to permit proof thereof to impeach witness, time of confinement in penitentiary is to be considered portion of time to create presumption of reformation.**

Where evidence of witness' conviction for receiving and concealing stolen property is offered for impeachment purposes, in determining whether the conviction was too remote to permit proof thereof, time of witness' confinement in penitentiary is to be considered as a portion of the time required to create presumption of reformation, in view of theory that one purpose of punishment is to reform the offender.

**5. Appeal and error ⟺1048(7)—Admitting impeaching evidence of witness' conviction, 14 years before trial, for receiving stolen property, held reversible error, especially in view of proof of reformation and conflict in evidence.**

Admitting evidence of witness' conviction for receiving and concealing stolen property to impeach the witness *held* error, where conviction was 14 years before trial, especially in view of proof of pardon and reformation, and such error was reversible, where witness' evidence conflicted with that of impeaching party.

**6. Witnesses ⟺321—Where plaintiff took deposition read in evidence, witness was plaintiff's witness as to impeachment rules, even though offered in person by defendant.**

Where plaintiff took deposition offered and read in evidence, witness was plaintiff's witness as to application of rules governing impeachment of own witness, even though he was introduced in person by defendant.

**7. Witnesses ⟺321—One offering witness may not impeach him by evidence of conviction for crime or reputation for veracity, but only by showing surprise and contradictory statements.**

One offering a witness vouches for his veracity, and may not impeach him by evidence of conviction for crime or of reputation for truth and veracity, but is limited to evidence showing that he was induced to believe witness would testify to facts beneficial to him, and to show contradictory statements inducing such belief.

**8. Trial ⟺215—In libel action, where special issues were submitted, refusal to charge on burden of proof held no error.**

In action for libel, where special issues were submitted, and instruction was given that jury should answer questions according to preponderance of evidence, refusing to charge jury that burden of proof was on plaintiff to establish affirmative of each issue submitted *held* no error.

**9. Libel and slander ⟺121(1)—$2,000 actual and $500 exemplary damages held excessive for writing employer untruthfully, but without malice, that defendant held assignment of plaintiff's wages, where no appreciable injury resulted.**

In libel action, $2,000 actual damages and $500 exemplary damages *held* excessive for writing to plaintiff's employer untruthfully, but without malice, that defendant held an assignment of plaintiff's wages, where plaintiff did not lose his position, or suffer diminution in rank, or have cause to be concerned about losing his position, or otherwise suffer appreciable injury.

**10. Libel and slander ⟺120(2)—To support exemplary damages in libel action, actual malice must be proved.**

In libel action to support exemplary damages, libelous statements must be proved to have been actuated by actual malice.

*On Appellee's Motion for Additional Findings of Fact.*

**11. Libel and slander ⟺112(1, 2)—Evidence in libel action held sufficient to prove letter to employer, stating plaintiff had assigned wages, was untrue, but insufficient to prove actual malice.**

In libel action, evidence *held* sufficient to prove that letter written by defendant to plaintiff's employer, stating that defendant held an assignment of plaintiff's wages, was untrue, but not sufficient to prove that the erroneous statements were made with actual malice.

**12. Libel and slander ⟺112(1)—Evidence held, insufficient to justify finding that letters by defendant's collector to plaintiff's employer were authorized by defendant's manager.**

Evidence in libel action *held* insufficient to justify requested finding that alleged libelous letters written by subordinate employee of defendant to plaintiff's employer, stating that plaintiff had assigned his wages to defendant, were authorized by defendant's manager.

**13. Libel and slander ⟺112(1)—Evidence held insufficient to justify finding that defendant ratified its collector's action in writing libelous letters to plaintiff's employer.**

In libel action, evidence *held* insufficient to justify requested finding that defendant confirmed action of collector in its employ in writing alleged libelous letters to plaintiff's employer, stating that plaintiff had assigned his wages to defendant.

**14. Libel and slander ⟺112(2)—Evidence held insufficient to justify finding libelous letters to employer, stating plaintiff had assigned wages, were sent in reckless disregard of consequences.**

Evidence in libel action *held* insufficient to justify a requested finding that alleged libelous letters to plaintiff's employer, stating that plaintiff had assigned wages to defendant, were sent with malice, because in reckless disregard of consequences that their publication might have on plaintiff.

Appeal from District Court, Dallas County; T. A. Work, Judge.

Action by E. L. Austin against Bernard's, Inc. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Caldwell & Gillen and Ballowe & King, all of Dallas, for appellant.

Crane & Crane and Edward Crane, all of Dallas, for appellee.

VAUGHAN, J. This is an appeal from a judgment rendered in the trial court awarding appellee actual damages in the sum of $2,000 and exemplary damages in the sum of $500 on account of a libel alleged to have been published by appellant of and concerning appellee. In his petition appellee in effect alleged that he had been damaged in the sum of $5,000 actual and $10,000 exemplary damages on account of the mailing by appellant, acting through one S. T. Kaufman, in its service as collector, two letters to Graham-Brown Shoe Company, a private corporation, with its principal office and place of business in the city of Dallas, Tex., the employer of appellee, advising said shoe company that appellee had given to appellant an assignment of his wages to pay appellant for certain clothing purchased at appellant's store in Dallas, Tex.; appellee further alleging that he was not so indebted to appellant, and did not even know of the existence of appellant's place of business in the city of Dallas, and had never executed, or authorized any one to execute for him, an assignment of his wages to appellant, and further alleged that said letters were malicious and untrue; that, if any such assignment had been made by his wife, Mrs. E. L. Austin, same was without appellee's knowledge and consent.

Appellant answered by way of a general demurrer, various special exceptions, special denials, and pleaded in mitigation of damages certain facts and letters written subsequently by it, upon discovering the mistake made by S. T. Kaufman, its collector, in writing the letters of date November 6 and November 11, 1925, furnishing the basis of appellee's suit. The cause was submitted to a jury on special issues, which resulted in a verdict and judgment in the sum of $2,500 in favor of appellee on the 22d day of June, 1926. Appellant, by its propositions Nos. 1, 2, and 3, presents to us for review the following proceedings:

While S. T. Kaufman, the only witness introduced by appellant, was under cross-examination, the following question was propounded to him by appellee: "As a matter of fact, several years ago you were sent to the penitentiary from Dallas for receiving and concealing stolen property?"—which he was required to answer, and did answer over timely and proper objections made thereto by appellant: "Yes, sir; more than 14 years ago."

[1] As an original proposition, this evidence was admissible for the purpose of impeaching the witness, and, standing alone, the objection on the ground that it was an improper method of impeaching a witness in a civil case, because the witness could not be impeached, except by proof of his general reputation for truth and veracity, would have been properly overruled. Gulf, Colorado & Santa Fé Ry. Co. v. Gibson, 42 Tex. Civ. App. 306, 93 S. W. 470; Huff v. McMichael, 60 Tex. Civ. App. 379, 127 S. W. 574; Wigmore on Evidence (2d Ed.) vol. 2, p. 361, § 980; Lights v. State, 21 Tex. App. 308, 17 S. W. 428; Clayton v. State (Tex. Cr. App.) 22 S. W. 404; Couch v. State, 103 Tex. Cr. R. 188, 279 S. W. par. 6, at page 824. We are aware of the decisions by other courts holding contrary to the rule of decision in the cited cases supra. But we prefer to follow what appeals to us as being that rule of decision calculated to best safeguard the rights of litigants under judicial determination.

[2] The fact of his conviction was provable by the witness on cross-examination; it not being necessary to produce the record of his conviction for that purpose. Lights v. State, supra; Bratton v. State, 34 Tex. Cr. R. 477, 31 S. W. 379; Levine v. State, 35 Tex. Cr. R. 647, 34 S. W. 969; Jones v. State, 44 Tex. Cr. R. 405, 71 S. W. 962; Curtis v. State, 46 Tex. Cr. R. 480, 81 S. W. 29.

[3] The fact that the witness had been pardoned does not change the rule. Wormley v. State, 65 Tex. Cr. R. 48, 143 S. W. 615; Perry v. State, 69 Tex. Cr. R. 644, 155 S. W. 263; Bennett v. State, 24 Tex. App. 73, 5 S. W. 527, 5 Am. St. Rep. 875. However, a different phase as to the admissibility of the evidence was presented by the testimony of the witness that the conviction was more than 14 years ago. Based upon this, appellant moved that the question and the answer be excluded, and that the jury be instructed not to consider same, on the ground that the conviction was too remote, which the court overruled.

[4, 5] Appellee here contends, and, no doubt, so contended in the court below, that the time of confinement in the penitentiary should not be taken into account as a portion of the period of time required to create the presumption of reformation on which rests the rule of evidence known as the "doctrine of remoteness," resorted to for the purpose of preventing the use of the conviction for a crime to impeach one offered as a witness in a judicial proceeding, this because it would be unreasonable to presume that one convicted for a crime had experienced a reformation during the time that he was doing penal servitude; that the reformation, from the very nature of the environments of the offender, could only be presumed to have begun after the termination of the period of penal servitude. To this we cannot agree. The purpose of the law, in inflicting punishment, is now, and has been for time immemorial, to mete out to the offender punishment commensurate with the crime—first, to punish the offender for the offense committed; second, to deter him and others from committing like offenses; and, third, to re-

form the offender. It being, therefore, part of the law of punishment to accomplish reformation through the means of the punishment inflicted, by what process of reasoning, in keeping with the well-known fundamental rules of logic, can the conclusion be reached that reformation cannot take place as result of the punishment during the time it was inflicted?

Certainly a bare presumption that the law had not accomplished, at least to the extent of putting in motion those attributes of the mind through and by which reformation can only be accomplished during imprisonment, would be but to declare the impotency of the law in so far as the purpose of punishment being to reform an offender; this would be but the declared purpose and intent of the law in this respect being destroyed by a presumption within the law that its purpose could not be accomplished—in other words, the declared purpose of the law being destroyed by a presumption within its own terms. We think the logic of the situation rather impels one to the conclusion that the infliction of punishment carries with it the presumption—disputable, it is true—that through the punishment inflicted on one for the commission of a crime that reformation during the period that punishment was being inflicted was set in motion by and continued throughout the punishment as result thereof. We therefore hold that the period of time in which reformation of the witness S. T. Kaufman should be presumed to have taken place dated with the beginning of his penal servitude.

We are of the opinion that, when it was disclosed by the testimony of the witness S. T. Kaufman that he had served a term in the penitentiary under a conviction 14 years previous to the date when he was testifying, appellant's objection should have been sustained on the ground that the conviction of the witness was too remote, unless proof had been offered by appellee showing that witness had not reformed. If in this conclusion there should be any doubt, certainly in the face of the positive proof of reformation that had taken place during the 14 years since the date of the conviction of the witness Kaufman, there can be no question but that the court erred in not excluding said testimony, namely, the witness testified that he was granted a conditional pardon by Gov. James E. Ferguson, and later on an absolute pardon by Gov. Pat Neff; had been for many months, and was then, engaged in employment which imposed confidence and trust in said witness by his employer, the appellant, and had been promoted from the position of a collector to that of store manager by appellant for its Dallas store; before being promoted, worked for several months with appellant in his principal place of business in New Orleans, La.

Assuming the burden of proof rested upon appellant to make proof of the reformation of the witness Kaufman, the evidence, introduced by appellant as to the reformation of said witness, was sufficient to discharge that burden. The admission in evidence of the conviction of the witness Kaufman for the purpose of impeaching him became material error, because of the following conflict in the testimony of said witness and that of the appellee: The witness Kaufman, being interrogated in reference to the letter written by him in behalf of appellant to Graham-Brown Shoe Company, advising that a mistake had been made in the claim that appellee had assigned his wages to appellant, testified:

"At the time I wrote that letter, Mr. Austin had 'phoned me. He said, if I would write a letter to the company, that would be satisfactory; that would settle the matter. Mr. Austin said that to me. It is not a fact that the only conversation Mr. Austin ever had with me or Mr. McIlhenny about this was when he had an interview with us and demanded that we produce that written assignment."

In reference to the same matter, appellee testified as follows:

"I did not tell him [referring to the witness Kaufman], if he would write that letter, that would end the matter. Certainly not. How could that end the matter? I didn't say that, or anything like it. Yes; right after I was down there, Mr. Kaufman did write this letter."

Appellee contends that, on account of certain conflict in the testimony of the witness Kaufman given by deposition and the testimony of said witness in person before the court, there was fairly raised the issue of his veracity which authorized appellee to impeach said witness by introducing in evidence the fact of his conviction for a crime. We have carefully considered the testimony of the witness on which said claim is based, and have been unable to discover the conflict that would tend to raise such issue, as all material facts testified to could be true, and yet no serious conflict exist. However, for the purpose of disposing of appellee's contention in this respect, it may be assumed that the conflict so asserted by appellee in fact exists. Even with that concession made, the situation of the parties as revealed by the record did not authorize the impeachment of the witness Kaufman through the means resorted to by appellee.

[6, 7] Kaufman was appellee's witness, as his deposition offered and read in evidence by appellee was taken by appellee. Such portion of the testimony of said witness as found favor with appellee was offered and read in evidence, and, even conceding that there arose a conflict of material import between the testimony of said witness as given by deposition and his testimony as given in person

before the court, the right to impeach would have been limited to introducing evidence of the contradictory statements of the witness for the purpose of discrediting his evidence bearing upon the issues in reference to which his testimony was in conflict. But we do not believe that there rested with appellee the right to impeach the witness by showing that he had been convicted of a crime, any more than the right to impeach under such circumstances, by proving that his general reputation for truth and veracity was bad, would have been available to appellee. As we understand the rule, one offering a witness vouches for his veracity, and cannot be heard to impeach him on any other ground than that the witness induced him to believe that he would testify to facts beneficial to him, and instead thereof testified to other and different facts damaging to his side of the cause, and, even then, resort cannot be had to any other mode of impeachment than to offer in evidence the contradictory statements made to the litigant, whereby he was induced to offer the offending witness.

[8] Appellant excepted to the court's charge, because same did not specifically instruct the jury that the burden of proof was upon the appellee to establish the affirmative of each issue submitted, and, as a part of its exception to the court's charge on account of such failure, requested the court to instruct the jury that the burden of proof was upon appellee to establish each issue by a preponderance of the testimony. Notwithstanding said exception and request, the court instructed the jury in reference to the burden of proof as follows:

"This cause is submitted to you on special issues in the form of questions, which you will please answer in the light of the testimony before you; your only duty being to answer the questions submitted. You will answer the questions propounded to you as you find the preponderence of the evidence to be."

The case was submitted on special issues, and, from the very nature of the case, the evidence introduced by the respective parties was before the jury for all legal purposes, namely, to be considered by them in arriving at their answers to the questions submitted, and it was their duty to consider and give proper probative effect to all of the evidence introduced by the respective parties in arriving at a conclusion in reference to the respective issues submitted to them; it being the province of the jury, under such submission, to find the facts as established by the evidence adduced from a preponderance of all the evidence before them, and that without regard as to whether it was introduced by the appellant or appellee.

In the case of St. Louis Southwestern Ry. Co. v. Preston (Tex. Com. App.) 228 S. W. 932, submitted on special issues, the court approved the following instruction as to the burden of proof:

"In order for you to answer either of the questions propounded 'yes,' you must believe the facts to be true from a preponderance of the evidence in the case." Tarwater v. Donley County State Bank (Tex. Civ. App.) 277 S. W. 176; Kuehn v. Kuehn (Tex. Civ. App.) 259 S. W. 290.

In the issues submitted, there was nothing requiring the court to charge that the burden of proof was upon appellee to establish either one of the issues by a preponderance of the evidence. The court did not err in refusing to instruct the jury, as requested by appellant, or in giving its charge in reference to the burden of proof objected to. Blum, v. Strong, 71 Tex. 324, 6 S. W. 167; T., B. & H. Ry. Co. v. Taylor, 79 Tex. 104, page 114, 14 S. W. 918, 23 Am. St. Rep. 316; Stooksbury v. Swan, 85 Tex. 566, 22 S. W. 963; Sunlite Co., Manufacturers, v. Justice (Tex. Civ. App.) 257 S. W. 579.

In Stooksbury v. Swan, supra, the court, in disposing of a similar question, held:

"In cases in which evidence is introduced by the respective parties, tending to prove and to disprove the issues of fact involved in a cause, occasion does not arise for declaration upon whom the burden of proof rests; for the question then becomes merely one of preponderance of evidence, which is for the decision of the jury under all the evidence introduced, whether this be direct or circumstantial. * * * In such cases a charge upon the burden of proof is more likely to mislead than to give a jury a correct view of their duties."

By the above doctrine we think the instant case should be ruled as to instructions upon the burden of proof. This proposition is overruled.

[9] Appellant challenges the judgment rendered as being excessive, both as to the amount of $2,000 actual damages and the amount of $500 exemplary damages. This has made necessary a careful review of the facts bearing upon the entire case, and required that same be viewed in the light most favorable to appellee, in so far as same might sustain the judgment in the respect in which it is thus challenged. The following is all of the evidence in reference to and bearing upon the injury sustained by appellee on account of the alleged libel, as testified to by him:

"As to what effect upon my feelings and my mental attitude the receipt of these notices by my employers had on me, it is pretty hard to describe a man's feelings."

The notices above referred to are the letters of date November 6, 1925, and November 11, 1925, to Graham-Brown Shoe Company, signed, "Ballew & King, by S. T. Kaufman," in which letters it was respectively stated that Bernard's, Inc., held an assignment of appellee's wages, executed by him to secure appellant in the payment of $31, and demanding that said sum be held by Graham-Brown Shoe Company to be paid to appellant. Appellee further testified:

"It certainly did humiliate me. * * * My relations have been the best between the executive officers of the Graham-Brown Shoe Company all these years. I needed them very much, and I had social and business relations with them, and I think their opinion of me was very good, and I needed it all of the time. * * * The first time they received a notice"—witness referring to the letter of date November 6th— "they merely put it in my box, and the next time they received a notice"—referring to letter of date November 11th—"it was put in my box with a little notation on it from 'Fred to Ernest: what about this?' * * * Mr. Fred Brown, who made the notation on the second note, is one of the officers of the Graham-Brown Shoe Company. * * * No; I did not lose my job about this matter; but I lost a good deal of time. I made one trip up to Bernard's to see them. One was sufficient; that was all I wanted. * * * After this second notice, an officer of the Graham-Brown Shoe Company took the matter up with me, and asked me to take the matter up with Bernard's, Inc. The officers of the Graham-Brown Shoe Company called my attention to it. After I received the second letter, I took the matter up with Bernard's, Inc., immediately on Saturday morning. * * * When I left for my work Monday morning, this matter weighed rather heavily on me, and I didn't want any misunderstanding about it."

This was after the receipt of the second letter, and the visit to appellant's place of business in reference thereto. On December 17, 1925, a letter was addressed by S. T. Kaufman to Graham-Brown Shoe Company, in which was stated:

"The circumstances as related by Mr. Austin are such that we take pleasure in having you relieve your files in so far as Mr. Austin is concerned, and Mr. Austin stated that he did not know the account to exist until called to his attention by the writer's letters to you. We trust that this letter will serve its purpose, and you are assured that neither Bernard's, Inc., nor the writer would do Mr. Austin an injustice. From the information at hand, the writer acted in good faith."

Appellee was a stockholder of and a director in the Graham-Brown Shoe Company, and was related to Fred Brown, the president thereof. Appellee had been in the service of such shoe company, as salesman, for 15 years continuously. He did not lose his position on account of said shoe company receiving the two communications from S. T. Kaufman, or suffer any demotion in rank, and, as shown by his testimony, did not have any cause to be concerned about losing his position or connection with said shoe company on account of the receipt of said communications.

[10] In view of the fact that this cause will be remanded for another trial, we will refrain from a discussion of the evidence, further than to say that it is very apparent that the judgment is excessive, both as to the sum of $2,000 actual damages and the $500 exemplary damages, as the evidence fails to show any appreciable injury resulting to appellee on account of the letters received by Graham-Brown Shoe Company in reference to the assignment of appellee's wages, or that same were actuated by actual malice; this being necessary to support exemplary damages. We therefore hold that this assignment is well taken.

The propositions not discussed are pretermitted, because: (a) Want of proper support in the record as to some; and (b) the errors complained of by others will not likely occur on another trial. Because of the errors pointed out, the judgment of the court below is reversed, and the cause remanded.

Reversed and remanded.

## On Appellee's Motion for Additional Findings of Fact.

[11] In compliance with above motion, we find the following additional facts, which were not disclosed or referred to in the original opinion, same not having been deemed necessary for the disposition of the appeal made by the assignments discussed, viz.:

First. That the evidence adduced was sufficient to support the finding of the jury that the statements contained in the letters and "notice of assignment" delivered to appellee's employer that appellee had assigned his wages to appellant were untrue. This finding is only authorized by the following evidence, which, in our opinion fails to show that the erroneous assertion was contumacious, but, to the contrary, more that of inadvertence. S. T. Kaufman, a witness for appellee, testified as follows:

In reference to the letter dated November 6, 1925, addressed to Graham-Brown Shoe Company, that he wrote said letter in reference to an assignment of wages of E. L. Austin, and signed same, "Ballew & King, by S. T. Kaufman," and that attached to said letter was notice of said assignment; that he did not know in whose handwriting said assignment was filled out, and further testified:

"I wrote the letter. As to whether or not, at the time that letter was written, Bernard's, Inc., had in its possession an instrument signed E. L. Austin, purporting to assign his wages: Well, it was not in the Dallas office; but the record here indicated that there was an instrument of that kind, or had been executed prior to the time that letter went out. As to what in the records here in the Dallas office that indicated that: There is a collection card, and the ledger sheet No. 1. All I did was to make an abstract of the ledger, the way the account stood. The letter dated November 6th is written on the letter head of Ballew & King. Bernard's, Inc., were paying Ballew & King $10 a month for the use of their stationery, and I was writing collection letters on their stationery. The letter was written by me at the office of Bernard's, Inc., and mailed out. As to what was the idea in using the letterhead of an attorney: Well, it just has a stronger effect in some cases. I also wrote another let-

ter to Graham-Brown Shoe Company on the letter head of Ballew & King, dated November 11, 1925; that was a follow-up of the first letter. We didn't get any response on the first one; so we followed it up. After the second letter was written, Mr. Austin called at the office of Bernard's, Inc. I think Mr. McIlhenny was there, too, when he came. He said he would like to see the assignment of wages. He said he didn't know that his wife had made any purchase prior to the time when the notice had come, but since then he did know that she had made it. He demanded that I produce the instrument that I was claiming was an assignment, and I told him at that time I did not have the instrument, but I could get it from New Orleans, and we did."

Question propounded by attorneys for appellees:

"Now, in this letter [referring to the letter of date December 17, 1925], after stating and advising Graham-Brown Shoe Company that they could relieve their files of the claim so far as Mr. Austin was concerned, you added a clause, 'from the information at hand, the writer acted in good faith;' now, what information did you have in hand?

"Well, the information I had there; according to the card I had, it showed the account was in the name of Mr. E. L. Austin, working at Graham-Brown Shoe Company, and, as usual in all these cases, we generally file notice of assignment, and in most cases get the money on them."

[12] Second. Appellee requests a finding that appellant's manager in charge of its Dallas office authorized the statements to be made in these communications that appellee had assigned his wages to appellant. This we cannot comply with, as same does not find support in all of the evidence introduced in reference thereto, viz.: Said witness S. T. Kaufman testified as follows, questioned by appellee's attorney:

"Now, at the time you wrote this letter, dated November 11th, had you received from the New Orleans office this instrument, which your record indicates was in existence?"

Answer:

"All I got was through Mr. McIlhenny; he was manager, and I was holding a subordinate position. As to whether or not these letters I have identified were, one dated November 6th, and one dated November 11th; I conferred with Mr. McIlhenny about writing the letters before writing them; he turned, not only that account, but others, over, and he told me to go ahead and handle them. I had made arrangements with Ballew & King for their stationery. He did not specifically authorize me to notify Graham-Brown Shoe Company that Bernard's, Inc., had an assignment of wages, any more than others; he just turned me over a bunch of accounts, and told me to go ahead and handle them."

In giving effect to this testimony, we construed same as if the witness had specifically stated, viz., "As to whether or not I conferred with Mr. McIlhenny about writing the letters .before writing them," because the words em-

ployed and as placed by witness clearly indicate that the witness was only summing up, as a preface to his answer, the effect of the question as applied to the letters of November 6th and 11th, namely, as to whether or not, before writing said letters, he conferred with Mr. McIlhenny about the writing of same, and in our judgment it would be doing violence to the context of same. to hold that same embodied a statement that he conferred with Mr. McIlhenny about writing the letters, as to what same should contain, before he wrote them. This conclusion is unerringly supported by the language:

"He turned, not only that account, but others, over, and told me to go ahead and handle them. He did not specifically authorize me to notify Graham-Brown Shoe Company that Bernard's, Inc., had an assignment of wages, any more than others; he just turned me over a bunch of accounts, and told me to go ahead and handle them."

Said witness further testified (question by attorney for appellee):

"If I understood you correctly, all these letters that you wrote to Graham-Brown Shoe Company were written after a conference with Mr. McIlhenny?"

Answer:

"No; as I said before, those accounts—not only Mr. Austin's, but possibly two or three dozen—were handed to me at the time, and I was supposed to follow up the collection of them, using every effort I could to collect them, and I had made a deal with Ballew & King, when I first started to work there, along in October and November, to use their letter heads. Mr. McIlhenny understood about that —he understood about the letters—and I went ahead and wrote the letters and sent them out. As to his understanding that I was writing Graham-Brown Shoe Company, claiming that Bernard's, Inc., had an assignment, he knew about it after Mr. Austin came up there. I couldn't say he knew before, but when he gave me those lists and those cards, it was just a card indicating the name, address, and merchandise purchased, and payments made; and if they were slow, or delinquent, he would hand them to me, and I was supposed to go out and get the money. Yes; I had a card in the office which on its face would indicate that Mr. Austin was the party to go to; when I looked at the card, I didn't see anything but the E. L. Austin part, and Graham-Brown Shoe Company; that is the reason I went after him. The main thing I had in mind in writing those letters was to get the money."

Appellee's ground for motion is therefore overruled.

[13] Third. Appellee further requests that we find that appellant, with full knowledge of the fact that said letters and communications had been delivered to appellee's employer, ratified and confirmed the action of its employé in sending them. This ground of the motion must be denied, because of the failure of the evidence to support same, viz.:

The first letter to Graham-Brown Shoe Company was written November 6, the second one November 11, 1925. No response was made, either by Graham-Brown Shoe Company or appellee, to the first letter. After the second letter was called to his attention by the following notation, placed by Mr. Fred Brown, of the Graham-Brown Shoe Company, on the envelope containing the letter, viz.: "Fred to Ernest: What about this?" appellee called at appellant's place of business in reference to the assignment claimed in the letter addressed to Graham-Brown Shoe Company, and the next day after this visit the letter of explanation above referred to was written by Mr. Kaufman, in behalf of appellant, to Graham-Brown Shoe Company, in which the following statement was made:

"We trust that this letter will serve its purpose, and you are assured that neither Bernard's, Inc., nor the writer would do Mr. Austin an injustice."

As to the knowledge of appellant's store manager, Mr. McIlhenny, of the letters of date November 6 and November 11, 1925, witness Kaufman testified:

"As to his understanding that I was writing Graham-Brown Shoe Company, claiming that Bernard's, Inc., had an assignment: He knew about it after Mr. Austin came up there; I wouldn't say he knew before."

This letter was written immediately after the only trip made by the appellee to appellant's place of business, at which time, from information furnished by appellee, appellant's then store manager, Mr. McIlhenny, and collector Kaufman were informed as to the erroneous claim made by appellant, acting through its said collector Kaufman, in reference to appellee having executed an assignment of his wages to appellant, and immediately after this, according to the testimony of appellee a letter was written in behalf of appellant, repudiating such erroneous claim, viz. (appellee testified): "Yes; right after I was down there, Mr. Kaufman did write this letter."

[14] Fourth. A further finding is requested to be made:

"That the statements were made with malice, in having been made in such utter recklessness as to indicate an utter disregard of the consequences that their publication may have had upon appellee."

This ground will have to be denied, as all the evidence bearing upon the question of malice, which is set out above, excludes the idea that the letters of November 6 and 11, 1925, addressed to Graham-Brown Shoe Company, were addressed to said shoe company in such a reckless manner as to indicate an utter disregard of the consequences that their publication might have upon appellee. We find that appellant was and is a corporation organized under the laws of the state of Louisiana, with its principal office at New Orleans, La., and was engaged in the business of selling men's and women's clothing at retail on a credit. At the date the letters were written and delivered to appellee's employer, it maintained a store at Dallas, Tex., in charge of a manager named McIlhenny, who had full authority to sell its merchandise and make collections on sales made, without referring the matter to any other person for direction or advice. At the times mentioned, appellant had no officer or director within the state of Texas. S. T. Kaufman was employed by appellant in October, 1925, as a collector, at the time the letters were written by appellant to appellee's employer on November 6, 1925, and November 11, 1925. Appellee did not execute an assignment of his wages to appellant, nor did his wife execute any instrument purporting to assign, or attempt to assign, appellee's wages to appellant, and the instruments executed by her were not subject to that construction.

Fifth. The only objections urged by appellant in the court below, as shown by the bill of exceptions in the record, to the admission of the testimony that the witness Kaufman had been sent to the penitentiary for receiving and concealing stolen property were: (a) The record of said conviction and sentence to the penitentiary from Dallas county would be the best evidence of the facts; (b) the witness could not be compelled to give verbal testimony, when said record evidence was not produced or offered; (c) the witness cannot be impeached in a civil case by showing that he has been convicted of a felony; (d) the question asked and the answer sought to be elicited were improper, in that this is a civil case, and the witness could not be impeached by showing his conviction of an offense; (e) said question was so framed as not to indicate whether the conviction inquired about was a remote or a recent conviction of a crime. After the witness answered that he had been convicted and sent to the penitentiary "more than 14 years ago," appellant moved to exclude the testimony on account of the remoteness of the conviction. No objection was urged or exception reserved to this testimony on the ground that appellee was impeaching, or attempting to impeach, his own witness.

Sixth. The record does not show that appellant urged any objection to the submission of issue No. 4, which involved the amount of actual damages, if any, sustained by appellee, nor does the record show that appellant moved to set aside the finding of the jury on this issue of $2,000 as being excessive. On the contrary, the only complaint made, as disclosed by appellant's assignment of error, which is paragraph 3 of its amended motion for a new trial was that:

"The court erred in rendering judgment in favor of the plaintiff against the defendant for the item of $2,000 actual damages in response

to the finding of the jury in answer to special issue No. 4, for the reason that the answer of the jury to this issue is preposterous, unsupported by the evidence, and is so grossly inequitable as to suggest strongly that the jury was prompted by improper motives in arriving at any such excessive amount as the actual damages to the said E. L. Austin, in that the undisputed evidence shows: That E. L. Austin was a stockholder of the Graham-Brown Shoe Company and was a director in said corporation, and was related to Fred Brown, the president thereof, and that he did not lose his position on account of the Graham-Brown Shoe Company receiving the communication from S. T. Kaufman, the collector of the defendant, stating that the plaintiff had assigned to Bernard's, Inc., his wages; and the testimony is further undisputed that he suffered no demotion in rank, and could have had no cause whatever to be concerned about losing his position or connection with Graham-Brown Shoe Company, on account of said communication having been made. And the only evidence whatever to support any damages at all was his statement on direct examination that he did not know just how he felt; that he was somewhat humiliated, and that it was hard for him to say how he felt; and his further statement on cross-examination that he received said letter in his mail box at Graham-Brown Shoe Company with notation from Fred Brown on the bottom of the letter, saying, 'Ernest, what about this?' And his further testimony, on cross-examination, that such communication reached him on Saturday; that he went on about his business for a week, and did not go to the defendant's until after he had gone out on the road and returned a week or 10 days later—which facts negative any inference that he was grieved, humiliated, or embarrassed, and his subsequent conduct showed the existence of none of these elements of damages, but, on the contrary, showed mere anger and a desire for the revenge of a lawsuit, unfounded in fact and unwarranted in conscience. All of said circumstances clearly show beyond question of a doubt that the said plaintiff suffered no actual damage at all, and that the verdict assessing $2,000 actual damages is excessive and outrageous."

Seventh. Said Kaufman was sworn as a witness for appellant, and testified in person before the court as follows, in reference to the letters of November 6 and 11, 1925:

"I wrote these letters myself, and did not communicate with any executive officers or officer of the corporation before I wrote the letters. It was just my manner of trying to collect money. Mr. McIlhenny did not give me any special instructions, in giving me any particular accounts."

Eighth. Before appellee asked the witness Kaufman if he had not been convicted and sent to the penitentiary for receiving stolen property, he had testified as herein set out.

Ninth. That the account, which was the basis of the letters of date November 6 and 11, 1925, appeared in appellant's ledger as follows: "Mrs. E. L. Austin, 405 S. Clinton."

Tenth. That said contracts of purchase were signed by Mrs. E. L. Austin, and contained the following headings:

"Bernard's, Inc.

| "405 S. Clinton St. | Mr. E. L. Austin. |
| "2 years. | 4—16—25. |
| "Phone No. C–4105. | (Purchaser.) |
| "Married. | |

"Bernard's, Inc.

"405 S. Clinton    Mrs. E. L. Austin    5—24—24."