## SAMUELS v. A. P. MITCHELL AUTO CO.
### (No. 7155.)

(Court of Civil Appeals of Texas. San Antonio. May 22, 1924. Rehearing Denied June 18, 1924.)

Trover and conversion ⬅➡10—Insurer's agent held liable as for conversion of check of insurer.

Where insurer's check was indorsed and delivered to insurer's agent, by the mortgagee of a car upon agent's promise to deliver the check or its proceeds to a mechanic in payment of his claim for repairs made on the car, agent by delivering the check to the owner of the car who cashed it and kept the proceeds, and thus made it necessary for the mortgagee to pay the mechanic's claim in order to protect the mortgage security, *held* liable to mortgagee for amount of claim with interest, as for a conversion.

Appeal from District Court, Tarrant County; Ben M. Terrell, Judge.

Action by the Texas State Bank of Fort Worth, against the A. P. Mitchell Auto Company, and others, in which A. W. Samuels and another were impleaded by the company. From the judgment rendered against him in favor of the Auto Company, A. W. Samuels appeals. Affirmed.

Samuels & Brown and Lawrence Tarlton, all of Fort Worth, for appellant.

Penry & Penry, of Fort Worth, for appellee.

SMITH, J. This transaction occurred in Fort Worth late in the year 1917. It concerns an automobile, which, being sold on credit, was pursued by a mortgage lien to secure the unpaid purchase price. It was insured, was wrecked, was repaired, and the insurance company, by an agreement with the parties at interest, became liable on its policy for an amount equal to the repair bill, which was $572.70. In one way or another, five different persons, firms, and corporations, each fortified with separate and able counsel, got into court in a controversy over the insurance money, which the insurer, after issuing and parting with its check therefor, was enabled through fortuitous circumstances to retrieve and safely impound into the registry of the court, for delivery to the successful claimant therefor. The facts must be pursued in tedious detail in order to be understood. We shall endeavor to state them.

The A. P. Mitchell Auto Company sold the automobile in question to one B. Pinto, who executed a chattel mortgage thereon in favor of the dealer to secure the payment of the purchase money note, amounting to $1,1175.

The car was then insured against damage by collision, in the Security Insurance Company. Less than two months later it was in an accident, and in due course fell into the hands of one M. Gabert, operating an automobile repair shop, who engaged to restore it to its original state of serviceability. His bill was $572.70. The record does not disclose whether the injury to the car was nominal or substantial, nor can we indulge in any presumption thereon from the amount of the repair bill. The fact is immaterial, however; the car was insured.

The insurer and the parties interested agreed upon a settlement in the amount of Gabert's bill, and upon completion of the repairs the insurer promptly issued its check for the amount thereof, making it payable jointly to Pinto, the owner, and the Mitchell Company, the dealer, to whom, under the terms of the policy, any loss was payable, according to the interest disclosed. This check when issued was sent by the insurer to its agent, A. W. Samuels, appellant herein. Up to this point the transaction, as has been seen, was of the most ordinary and prosaic nature, and the case quite simple. But the moment the check was issued and got in

circulation, the situation became hectic, and the case was precipitated into distracting complications, as will be seen.

Upon Samuels' receipt of the check, Pinto called at Samuels' office and indorsed it. Samuels thereupon procured the Mitchell Auto Company, the dealer, to likewise indorse the check and deliver it to Samuels upon the latter's representation (according to the jury's finding) that he would in turn deliver it to Gabert, the mechanic, in payment of the latter's bill. But, instead of turning the check over to Gabert, as he had agreed, Samuels delivered it to Pinto, the owner of the car. Incidentally, it is appropriate to note at this juncture that Pinto owed Samuels $85 for the premium on the insurance policy.

Upon receipt of the check procured in this way, Pinto hastily cashed it through the Texas State Bank of Fort Worth, pocketed the proceeds, out of which, it should again be incidentally noted, he paid Samuels' bill of $85. Pinto, who seems to have paid nothing on the purchase price of the car, was apparently satisfied with the cash so haply obtained in the transaction, and abandoned his claim on the car, which was thus left unredeemed on the mechanic's hands.

A few days later, upon ascertaining what had been done, the Mitchell Auto Company communicated directly with the insurance company, which, upon learning the facts, stopped payment of the check, whereupon the bank brought this suit against the insurance company, Pinto, and the Mitchell Auto Company. The latter answered, impleading Samuels, the agent, and Gabert, the mechanic, and prayed for judgment over against them. Gabert, himself litigiously disposed, in turn presented a cross-action against the insurance company for the amount of his bill. Subsequently, however, the Mitchell Auto Company, in order to save its security, paid the Gabert bill, and in a supplemental answer sought to be subrogated to the latter's rights under the mechanic's lien. Having preserved the amount involved, the insurance company deposited it into the registry of the court, to await judicial ascertainment of the ownership.

Upon a special finding of the jury, that Samuels through an agent "procured the indorsement and delivery of the check * * * upon an agreement that the same would be used for the purpose of discharging the car from the claim of M. Gabert for repairs thereon," the court rendered judgment in favor of the bank against the insurance company, the Mitchell Auto Company and Pinto for the amount of the claim with interest, and in favor of the Mitchell Auto Company over against Samuels for a like amount. The latter alone has appealed.

Summarized, the facts may be stated in this way: Samuels, the insurance agent, came into possession of the unindorsed check in controversy. It was delivered to him for a specific purpose, to wit, to be delivered in turn to its rightful owner. It was payable jointly to Pinto and the Mitchell Auto Company, it is true. But under the terms of the insurance policy it was payable primarily to the Mitchell Auto Company, as its interest might be made to appear. As a matter of fact that interest was not only paramount to, but was exclusive of, Pinto's interest, being the interest of a mortgagee in a sum greater than the amount of the check. The mechanic's claim was the measure of the amount of the check, and the check was issued by the insurer, at the instance and with the knowledge of all the parties, for the one purpose of paying that claim. Samuels knew all the facts, and the check was indorsed by the mortgagee and delivered to him, at his instance, with the distinct understanding and agreement, and upon his express representation and promise, that he would in turn deliver it or the proceeds thereof to Gabert; at least, the jury so found upon sufficient evidence. Instead, however, Samuels converted it, if not wholly, then at least in part, and put the balance out of reach of the rightful owners. This made it necessary and proper for the Mitchell Auto Company to pay the Gabert bill, in order to protect its security, and Samuels became liable to the Mitchell Auto Company, as for a conversion.

This conclusion renders all of appellant's assignments immaterial, and for that reason we overrule said assignments, and affirm the judgment.