Mary L. SUDDARTH et al., Appellants,

v.

Laura POOR et vir., Appellees.

No. 980.

Court of Civil Appeals of Texas, Tyler.

Jan. 20, 1977.

Rehearing Denied Feb. 17, 1977.

William Andress, Jr., Andress, Woodgate & Lodewick, Dallas, for appellant.

Bill J. Stephens, Stephens & Stephens, Dallas, for appellees.

MOORE, Justice.

This is a suit to cancel a deed and for conversion of certain funds. The plaintiff, Mary L. Suddarth, brought suit by next friend, A. H. Mohon, against her niece, Laura Poor and husband, Arthur Poor, defendants, to set aside a deed by which she conveyed to defendants her home and approximately 9.5 acres of land and reserved a life estate. Plaintiff alleged that the defendants had unduly influenced her and that she lacked mental capacity to execute the deed. Plaintiff further alleged that the defendants had converted to their own use funds received from two checks totaling $7,200.00 which she endorsed and instructed defendants to deposit to her account. The defendants answered with a general denial and filed a motion for summary judgment asserting that the issues in the present suit had been adjudicated in Cause No. 74–1036–C styled *Mary L. Suddarth v. Laura Poor, et vir,* and therefore the judgment in that case was res judicata as to all matters pled by the plaintiff.[1] Trial was held before a jury and the case was submitted on three special issues. In response to the special issues the jury (1) refused to find that Mrs. Suddarth signed the deed because of undue influence by the defendants; (2) found that Mrs. Suddarth had mental capacity to execute the deed in question; and (3) refused to find that defendants converted the funds in controversy. Based upon such findings, the trial judge entered a judgment that the plaintiff take nothing, from which the plaintiff perfected this appeal. The parties will hereinafter be referred to as they appeared in the trial court.

We reverse and remand.

Plaintiff, Mary L. Suddarth, was approximately 89 years of age at the time of trial and lived at her home situated on a 9.5-acre tract of land in Dallas. She had been a widow for many years and had no children. The evidence shows that in addition to her home, which was valued at several hundred thousand dollars, she owned a large amount of stock in various corporations. Defendant Laura Poor was her niece and is the daughter of Mrs. Suddarth's sister, Evelyn Goodnight. Mrs. Suddarth's nearest relatives consisted of several brothers and sisters. In 1962 she suffered a stroke. Shortly thereafter Laura Poor and her husband prepared a will which Mrs. Suddarth signed. Under the terms of the will she left her home to Laura and left the remainder of her estate to her brothers and sisters. In 1963 Mrs. Suddarth revoked the 1962 will by a new will in which she directed that her entire estate be sold and the proceeds divided among a certain group of designated relatives which did not include Laura Poor. On May 12, 1972, Mrs. Suddarth was hospitalized for a period of twelve days as a result of a fall in her home. According to the testimony of her family physician, Dr. Goode, she suffered from cerebral arteriosclerosis and was not mentally competent at that time. In July 1972, after she had returned home from the hospital, Laura Poor and her husband employed an attorney to prepare a deed conveying the Suddarth home situated on the 9.5-acre tract of land to Laura Poor and Arthur Poor and reserving a life estate to the same in Mrs. Suddarth. The deed was signed on July 31, 1972. On August 2, 1972, she executed a new will in which she revoked all prior wills and bequeathed to Laura Poor her home situated on the 9.5 acres of land reciting that it was the same property she had deed-

1. The record reveals that in the prior litigation Mrs. Suddarth sought to set aside the deed on the ground of undue influence and lack of mental capacity. Defendants answered that suit with a plea in abatement alleging Mrs. Suddarth was mentally incompetent and unable to manage her affairs. After hearing the plea in abatement in that cause, the trial court found that Mrs. Suddarth was mentally incompetent and unable to manage her own affairs and had no guardian. For this reason the trial court entered an order sustaining the plea in abatement in Cause No. 74–1036–C on December 23, 1974. The present suit was filed by A. H. Mohon as next friend of Mrs. Suddarth under the provisions of Rule 44, Tex.R.Civ.P. Defendant's motion for summary judgment in the present suit was overruled in the final judgment entered in the present suit.

ed to Laura Poor and husband, Arthur Poor, on July 31, 1972. The will was prepared by Wynn Stanton, the same attorney who was employed by defendant to prepare the deed.

Shortly after executing the deed to Laura and Arthur Poor, Mrs. Suddarth decided to give .8 of an acre off her 9.5-acre tract to her gardener, a faithful employee for many years. When she employed an attorney to prepare a deed she found that the .8 acre tract was included in the deed to Laura and Arthur Poor. Prior to this time, Mrs. Suddarth was apparently under the impression that the deed to the Poors did not embrace 3.61 acres described as being across a small creek that transcended her property and from which the .8 acre tract was to be taken. Her attorney, Wynn Stanton, testified that she became upset and had him prepare a quit claim deed to the .8 acre tract which the Poors subsequently executed at the plaintiff's request.

In September 1973 Mrs. Suddarth employed E. L. Markham, Jr., attorney at law, to set aside the deed which she executed to Laura and Arthur Poor. On September 28, 1973, Markham addressed a letter to Dr. and Mrs. Poor advising them that he had been employed to regain title for the plaintiff. He advised them that Mrs. Suddarth did not recall signing the deed or the contents thereof and requested them to voluntarily reconvey the property to her. When they refused, this litigation commenced.

The paramount issues in the case were (1) whether Mrs. Suddarth had mental capacity to execute the deed on July 31, 1972, and (2) whether she was unduly influenced to sign the same.

The medical testimony pertaining to the issue of the plaintiff's mental capacity was voluminous and detailed. Dr. James A. Goode testified that he had treated Mrs. Suddarth in 1962 when she had suffered a stroke and from May 31, 1972, until June 11, 1972, after she had suffered a fall in her home. According to his testimony she was suffering from organic brain syndrome and arteriosclerosis; and that during the period from May 31, 1972, until June 11, 1972, she was incompetent and unable to understand the nature of her business transactions. He further testified that a person suffering from organic brain syndrome may rapidly return to mental alertness, but such is frequently an intermittent situation. He was unable to express an opinion as to her competency on July 31, 1972, the date on which she signed the deed. Dr. R. M. Flasdick testified he treated Mrs. Suddarth from September 12–19, 1972, while in the hospital for dehydration. He was of the opinion that she was mentally incompetent during this time, but expressed the opinion that she was probably competent on July 31 when she signed the deed. Dr. Clay Griffith testified he saw Mrs. Suddarth on October 2, 1974, along with Dr. John T. Holbrook, and he diagnosed her problem as organic brain syndrome. According to his testimony she did not at that time know the extent of her property and was incapable of making decisions. He was unable to say what her condition was when she executed the deed in 1972. Dr. John T. Holbrook, a psychiatrist, testified that he found Mrs. Suddarth to be suffering from brain damage and loss of memory. He testified she suffered from organic brain syndrome and had suffered such condition for two to five years before his examination. When asked what effect the condition had on Mrs. Suddarth, he testified that it would affect her ability to transact business in that she would be deprived of her normal elements of judgment and would be more open to suggestion than a person not suffering from such condition. He testified that if she suffered from this condition, prior to the signing of the deed as Dr. Goode found she had, she was probably still suffering from the disease on the date she signed the deed in 1972. Dr. David Webb testified that he saw Mrs. Suddarth intermittently between January 27 and July 11, 1972, and thought she was capable of handling her business transactions. He saw her next on September 21, 1972 and again felt she was competent. He declined to express an opinion as to her mental competence on July 31, 1972, the date on which she executed the deed in question.

Virginia Upshaw, a practical nurse who was employed to take care of Mrs. Suddarth after she returned home from the hospital on June 12, 1972, testified, in substance, that from the time the plaintiff was discharged from the hospital until she signed the deed, she was unable to manage her affairs and did not know what she was doing. Other lay witnesses were called by both parties. Some of the witnesses testified, in substance, that she was competent while others testified that she was incompetent.

Upon the issue of undue influence, numerous witnesses were called by both parties. While there was sufficient testimony to support the jury's finding that Mrs. Suddarth was not unduly influenced, there was also ample testimony to show undue influence.

In view of the fact that we do not decide the case on the basis of whether there was sufficient evidence to support the jury's verdict, we do not find it necessary to set forth all of the evidence in detail. It will suffice to say that we believe there was sufficient probative evidence to authorize the jury to answer such issues either in the affirmative or the negative.

■ Under her first point of error, plaintiff seeks a reversal on the ground that the trial court erred in admitting her last will and testament into evidence over her objection that the contents of the will were a privileged communication between her and her attorney E. L. Markham, Jr. We sustain the contention. In connection with this point the record reveals that counsel for defendants called Mrs. Suddarth's attorney, E. L. Markham, Jr., as a witness and inquired as to whether he had in his possession the most recent will executed by Mrs. Suddarth. After he replied that he had the will, counsel for defendants requested him to produce it for inspection. At this point, both Markham and Mrs. Suddarth objected on the ground that her will was a privileged communication. After a hearing outside the presence of the jury, the trial court ruled that the will was admissible and, accordingly, overruled plaintiff's objection,

thus permitting defendants to offer the same into evidence before the jury.

■ The courts are in accord upon the general rule that while a client is still alive his communications with his attorney concerning the preparation of the client's will are privileged. *Krumb v. Porter,* 152 S.W.2d 495 (Tex.Civ.App., San Antonio 1941, err. ref'd); see 61 Tex.Jur.2d Witnesses, sec. 114 and the cases cited therein; see also 81 Am.Jur.2d Witnesses, sec. 201; 66 A.L.R.2d 1302. An instrument which itself constitutes a communication between an attorney and client and owes its existence to an effort to transmit information from one to the other is privileged to the same extent as any other communication between attorney and client and a court may neither require it to be produced nor compel the giving of evidence as to its contents. See 81 Am.Jur.2d sec. 203 and the cases cited therein.

For reasons hereinafter stated, we are of the opinion that the error resulted in harm to the plaintiff as we shall attempt to demonstrate under our discussion of the following point of error.

■ By her second point of error plaintiff complains of the action of the trial court in permitting defendants to call her attorney as a witness and then permitting defendants to attack his credibility by showing his non-final conviction of a crime. Plaintiff objected to the testimony on the ground that a party is prohibited from impeaching his own witness. The court overruled the objection and Markham was compelled to admit that he had recently been convicted in the United States District Court of making a false statement to an agency of the United States government. He further testified that such conviction was pending on appeal. There is nothing in the record to indicate that the defendants were surprised by any of his testimony prior to their attempt to impeach him and defendants do not so contend. Plaintiff, Mrs. Suddarth, contends that such evidence was immaterial to any issue in the case and was prejudicial and calculated to injure her

**142**

right to a fair trial. We sustain her contention.

It is an elementary, common rule that a party may not impeach his own witness in the absence of a showing of surprise. See 62 Tex.Jur.2d Witnesses, secs. 323, 327. It is also the rule that a party may not impeach his own witness by showing that the witness has been convicted of a crime even though surprise is shown. *Bernard's, Inc. v. Austin,* 300 S.W. 256 (Tex. Civ.App., Dallas 1927, err. ref'd); see also 62 Tex.Jur.2d Witnesses, sec. 329 and the cases cited therein. Markham was not a party to the suit and evidence of his conviction was immaterial to any issue in the case. Obviously, such evidence was improper and prejudicial and its admission constituted error.

This brings us to a consideration of the question of whether the improper evidence resulted in harm to the plaintiff. In *Pittman v. Baladez,* 158 Tex. 372, 312 S.W.2d 210, 216 (1958), the rule for determining harm was stated as follows:

". . . This question is to be determined as a matter of our judgment in the light of the record as a whole. Pittman, in order to discharge his burden of establishing the inadmissible evidence was prejudicial, was not required to prove or demonstrate that but for the erroneous action of the trial court in admitting the testimony, a different judgment would necessarily have resulted. See *Texas Power & Light Co. v. Hering,* 148 Tex. 350, 224 S.W.2d 191, 192; *Southwestern Greyhound Lines v. Dickson,* 149 Tex. 599, 236 S.W.2d 115. It was only necessary that he establish that the evidence was reasonably calculated to and probably did cause the rendition of an improper judgment. See *American General Ins. Co. v. Jones,* 152 Tex. 99, 255 S.W.2d 502; *Missouri-Kansas-Texas Railroad Co. v. McFerrin,* Tex., 291 S.W.2d 931, 944; Rules 434 and 503, Texas Rules of Civil Procedure."

The record reveals that Mrs. Suddarth employed E. L. Markham, Jr., as her attorney in August 1973. She was referred to him by her nurse, Virginia Upshaw, who had once worked for Markham's mother. According to Markham, he was employed for the purpose of drafting a new will for the plaintiff and for the purpose of setting aside the deed which plaintiff executed to Laura and Arthur Poor on July 31, 1972. Shortly after being employed he drafted a will which was executed by Mrs. Suddarth on September 27, 1973. By this will Mrs. Suddarth revoked her will of August 1972 in which she bequeathed her home to Laura Poor and directed, in substance, that all of her property including her home be sold except for certain specified bequests and that the proceeds therefrom be divided into equal parts and distributed to eight of her relatives named in the will. Although neither Laura Poor nor her mother, Mrs. Goodnight, was among those eight named beneficiaries a specific bequest of some stock was made to Mrs. Goodnight. Laura Poor was named as a contingent beneficiary to the stock bequest, to take only in the event her mother, Mrs. Goodnight, predeceased the testatrix. On January 23, 1974, plaintiff executed another will that Markham had prepared for her. By the 1974 will she again directed her executor to sell all of her property, including her home, except for certain specified items and that the proceeds be divided into ten equal parts and distributed to certain relatives named therein. Defendant, Laura Poor, was not mentioned in this will. In both wills Mrs. Suddarth named E. L. Markham, Jr., as her independent executor. She authorized her executor to sell her home as well as all her other property, except certain specified bequests and to divide the proceeds. She provided that Markham was to receive the usual and customary executor's fees.

After being called as a witness and being compelled to disclose the contents of Mrs. Suddarth's last will showing that he had been appointed independent executor and was to receive a fee therefor, Markham testified that he followed Mrs. Suddarth's instructions in filing the present suit to cancel the deed in question and followed her instructions in preparing the wills.

Mrs. Suddarth was not called as a witness and there is nothing in the record indicating that Markham failed to act in accordance with her instructions or that he unduly influenced her in filing suit to set aside the deed to defendants or in preparing the wills. Despite the fact that there was no reason for doing so, defendants nevertheless chose to call Markham as their own witness and then proceeded to discredit him by showing he had been convicted of a crime.

We have found no decision declaring it to be harmless error where a party calls his adversary's attorney to the stand and requires him to admit that he has been convicted of a crime. While Markham's conduct is not to be condoned, the fact that he had been convicted of a crime had nothing whatever to do with the merits of Mrs. Suddarth's cause of action and from its nature was calculated to be damaging to her. It had the effect of showing that her attorney was disreputable and could not be trusted and was therefore calculated to cause the jury to answer the special issues contrary to the way he advocated. He was thoroughly discredited in the mind of the jury and it was reasonably probable that the jury considered such in arriving at a verdict for defendants. We do not believe the error was harmless nor do we believe that an instruction from the court would have removed the mar. To hold otherwise, we believe, would set a precedent that would invite similar attacks on opposing counsel.

Further, we think the error of the court in admitting Mrs. Suddarth's last will into evidence before the jury showing that she had appointed Markham as her executor to sell her home after her death, which act would increase his executor's fees, together with the error of the court in permitting defendants to show he had been convicted of a crime was calculated to cause and probably did cause the jury to return a verdict in favor of defendants on the theory that it would be better to leave her home in the hands of Mrs. Poor rather than to turn it over to a disreputable executor. While it

may be that Mrs. Suddarth used poor judgment in selecting Markham as her attorney and as her independent executor, proof of such facts would serve no purpose other than to cause the jury to answer the issues favorable to the defendants. For this reason, we think the error of the court in admitting the evidence resulted in harm to Mrs. Suddarth and amounted to such a denial of her rights as was calculated to cause and probably did cause the rendition of an improper judgment.

Under points five and six plaintiff seeks a reversal on the ground that the jury findings (1) that she had mental capacity to execute the deed, and (2) that she was not unduly influenced are against the great weight and preponderance of the evidence. In view of our decision to reverse and remand the cause on other grounds, we do not reach these points. However, if these points were reached, we would hold that the evidence is such that we do not believe we would be justified in finding that the verdict and judgment is contrary to the overwhelming weight and preponderance of the evidence.

By her seventh point plaintiff contends that the finding by the jury that defendants did not convert certain funds which they withdrew from the Oak Cliff savings account in which Mrs. Suddarth was a joint depositor is against the great weight and preponderance of the evidence. The controversy here was brought about by the fact that the City of Dallas purchased a small part of Mrs. Suddarth's homeplace for right-of-way purposes subsequent to the time she conveyed title to Laura Poor and retained a life estate. While the record is unclear, the City apparently issued a check to Mrs. Suddarth for $4,683.00 in payment for damages to her life estate and issued a check to Laura Poor for $2,517.00 for damage to her remainder interest. Mrs. Suddarth was the sole payee on the larger check while the smaller check was made payable to Laura and Arthur Poor and Mrs. Suddarth. The undisputed testimony shows that both checks were endorsed by Mrs. Suddarth and turned over to Dr. Poor with

the stipulation that the funds were to be used to make sure that Mrs. Suddarth would never be placed in a rest home and to provide a place for her and her sister, with the remainder to be used for repairs for her home. The record reveals that the funds were originally deposited in the Oak Cliff Savings and Loan Association in a joint account of Laura and/or Arthur Poor and/or Mrs. Suddarth. Approximately one year later Laura Poor withdrew the funds and deposited the same in the American Savings Association in the joint account of Evelyn Goodnight and/ or Laura Poor or Arthur Poor. As far as the record reveals, these funds remained on deposit in that account on the date of the trial.

By Special Issue No. 3, the jury was requested to find whether defendants converted the sum of "(a) $4683.00" to which the jury answered "No." Immediately following this inquiry the jury was instructed that if they had found in response to Special Issues 1 and 2 that Mrs. Suddarth had not been unduly influenced and that she had mental capacity, then they were not to answer "b" which read as follows: "b. 2517.00 _____." In view of the jury's finding that plaintiff was not unduly influenced and had mental capacity, section "b" was not answered. As we understand the record, the ownership of the funds to the extent of $2,517.00 depends on a final determination of whether the deed to Laura and Arthur Poor is found to be valid. In view of our decision to reverse and remand for a new trial, the question of the validity of the deed is yet to be determined. Therefore, the take-nothing judgment rendered against Mrs. Suddarth with regard to these funds is superfluous and forms no basis for a judgment in favor of defendants.

With regard to the $4,683.00 which the jury refused to find was converted by the defendants, the undisputed proof shows Mrs. Suddarth was the sole payee on the check issued by the City of Dallas. It is likewise undisputed that defendants took the funds in trust to be used for her benefit. Defendants admit that they had these funds at the time of trial. Whether the deed executed by plaintiff to defendants is valid or not, the $4,683.00 paid to her by the City of Dallas as damages to her interest in her homeplace became her funds. To allow the defendants to retain these funds would constitute unjust enrichment. Under the circumstances, we agree with the plaintiff that the take-nothing judgment denying her a right to recover the $4,683.00 entrusted to the defendants is against the overwhelming weight and preponderance of the evidence. Accordingly, the judgment denying her a recovery on her cause of action for conversion is reversed and remanded.

Other matters complained of by the plaintiff will not be likely to arise upon another trial and for that reason we will forego a discussion of those points.

This brings us to the defendants' crosspoints. In the first crosspoint the defendants contend that the trial court erred in overruling their motion for instructed verdict after plaintiff rested because there was no evidence of probative force to overcome the presumption of plaintiff's mental capacity to execute the deed. Similarly, crosspoint two makes the same complaint concerning the question of undue influence. An instructed or directed verdict is proper only when there is no evidence of probative force to support a necessary issue. *Evans Advertising Agency, Inc. v. Morphew,* 525 S.W.2d 56 (Tex.Civ.App., Tyler 1975, no writ); *Stephenson v. O'Neal,* 433 S.W.2d 804 (Tex.Civ.App., Houston [1st Dist.] 1968, writ ref'd n. r. e.); *Owens v. Ridgeway,* 395 S.W.2d 704 (Tex.Civ.App., Amarillo 1965, writ ref'd n. r. e.). As stated, we are of the opinion that there was adequate testimony on both the issue of mental capacity and the issue of undue influence to raise an issue and create a question of fact for the jury. Consequently, defendants' motion for an instructed verdict on such issues was properly refused. Crosspoints one and two are overruled.

Crosspoint three complains of the trial court's refusal to grant an instructed verdict in favor of the defendants on plaintiff's cause of action for conversion. What we have heretofore said with regard to the

issue of conversion renders further discussion unnecessary. The point is overruled.

By their fourth crosspoint, the defendants contend that the trial court erred in refusing to sustain their plea of res judicata. Defendants argue the dismissal of Cause No. 74–1036–C hereinabove referred to was a final judgment disposing of all issues in the present suit. We cannot agree with this proposition. Judgment granting the plea in abatement specifically stated that the suit was dismissed due to the plaintiff's lack of mental capacity to prosecute her suit in her own right at that particular time. Obviously, the judgment entered in that proceeding would not be res judicata and stand as a bar to all issues in the present suit because the only issue litigated in that proceeding was whether Mrs. Suddarth was non sui juris at that particular time. The crosspoint is without merit and is overruled.

The judgment is reversed and the cause is remanded for a new trial.