Morris A. WARD, Sr. and Clyde
DeLay, Appellants,

v.

SHRIRO CORPORATION, Appellee.

No. 19393.

Court of Civil Appeals of Texas,
Dallas.

Dec. 29, 1978.

Rehearing Denied Feb. 2, 1979.

S. L. Lewis, Stephen M. Stasio, Dallas, for appellants.

Jay M. Goltz, Dallas, for appellee.

Before GUITTARD, C. J., AKIN and ROBERTSON, JJ.

GUITTARD, Chief Justice.

Shriro Corporation recovered judgment against Morris Ward and Clyde DeLay for conversion of a check issued by Transcontinental Insurance Company. Earlier this year we reversed that judgment and rendered judgment for defendants Ward and DeLay on the ground that Shriro Corporation had elected its remedy when it settled its claim against Transcontinental, one of the original defendants, for failure to include the name of Shriro Corporation in the check. *Ward v. Shriro Corporation*, 561 S.W.2d 589 (Tex.Civ.App.—Dallas 1978). The supreme court disagreed with that holding, reversed our decision, and remanded the case to us for consideration of the other points raised by defendants. *Shriro Corporation v. Ward*, 570 S.W.2d 395 (Tex. 1978). After considering the other points, we overrule those asserting that there is no evidence supporting the jury's finding of conversion against Ward and DeLay. We also overrule Ward's point asserting that there is no evidence of malice on his part.

We hold, however, that the punitive damages assessed against him are excessive. We also sustain DeLay's point asserting that there is no evidence of malice on his part. Accordingly, we remand the cause for a new trial unless remittiturs are filed of the punitive damages which we find improper.

The record shows that the check in the amount of $4,241.61 was issued by Transcontinental Insurance Company in payment of a water-damage claim under a contract of builder's-risk insurance. The insured parties named in the policy were Rio Lado, Limited, a limited partnership of which defendant Ward was general partner, and Shriro Corporation, the general contractor engaged in construction of an apartment project owned by Rio Lado. Shriro Corporation repaired the water damage, and Ward, acting for Rio Lado, signed the following agreement:

> It is agreed that the Owner [Ward] and Contractor [Shriro Corporation] will encourage the insurance agent for Rio Lado Apartments, Clyde DeLay, without assuming liability for such claim in any manner, to process claims for water damage at the apartments promptly so that there is no undue delay in the issuance of checks. Upon issuance the Owner will endorse checks over to Contractor and instruct Mortgage Company to do likewise.

In response to the water-damage claim, the insurance company issued its check payable to Rio Lado and its mortgagee but did not name Shriro Corporation as a payee. DeLay obtained the endorsements of the mortgagee and of Ward as general partner of Rio Lado, and then applied the proceeds to a debt owed to him by Rio Lado for funds previously advanced by him to pay the premium on the insurance policy in question. Both DeLay and Ward refused the demands of Shriro Corporation to pay the proceeds to it. Shriro Corporation then brought this suit against DeLay, Ward, and the insurance company. After obtaining settlement from the insurance company in the amount of $1,500, Shriro Corporation pursued the suit against Ward and DeLay for conversion of the proceeds of the check and for punitive damages. The jury found that both Ward and DeLay converted $3,817.45 from the proceeds of the check (apparently deducting from the face amount of the check a fee of $424.16 paid to a public claims adjuster for presenting the original claim to the insurance company). The jury further found that both Ward and DeLay acted with malice and assessed punitive damages of $20,000 against Ward and $7,500 against DeLay. The trial court deducted from the actual damages the $1,500 received in settlement and rendered judgment against both defendants for $2,317.45, together with punitive damages against each defendant as assessed by the jury.

### 1. Conversion

In support of their contention that this evidence does not support the finding of conversion, Ward and DeLay cite *Bradley v. McKinzie*, 226 S.W.2d 458 (Tex.Civ.App.—Eastland 1950, no writ), for the rule that in order to establish a conversion, the evidence must show that the defendant deprived the plaintiff of a specific chattel. They point out that for Shriro Corporation to have been deprived of a specific chattel, it must have been the owner of the property or have been entitled to legal possession, citing *Lone Star Beer, Inc. v. Republic National Bank*, 508 S.W.2d 686 (Tex.Civ.App.—Dallas 1974, no writ). They insist that plaintiff Shriro Corporation never had possession of the check and had no title which gave it the right to possession because it was not named as a payee in the check, and even if it had been named, that it would not have been entitled to the proceeds without the endorsements of the other payees. Thus, they contend that although plaintiff may have had a contractual right to payment for its repair of the water damage, or even a contractual claim against Rio Lado and Ward based on their written agreement to pay over the proceeds, breach of such contract rights does not establish the tort of conversion.

We cannot agree with this argument because we conclude that plaintiff was the owner of the check and entitled to its possession, and that consequently, a conversion occurred when Ward endorsed it and delivered it to DeLay with instructions to apply it to Rio Lado's debt to DeLay.

The check was issued under an insurance policy naming the parties insured as "Rio Lado Apartments, Ltd., Melnick-Shriro, Inc. and Subcontractors, as their interests may appear." The evidence shows that Melnick-Shriro, Inc. is now Shriro Corporation. The policy contains the following provisions:

> LOSS PAYABLE CLAUSE: *Loss, if any, shall be adjusted with the named insured and shall be payable to him* unless other payee is specifically named hereunder; provided, at the option of the Company any loss to property of others may be adjusted with and paid to the owner of such property . . . .
>
> *If more than one insured is named* in the declarations, *the insured first named shall act for itself and for every other insured* for all purposes of this Coverage Part. [Emphasis added.]

■ Since Rio Lado is the insured first named, it is authorized to act for the other insureds, including plaintiff Shriro Corporation. We construe this language as constituting Rio Lado as plaintiff's agent for the *purpose of receiving payment* under the policy. Consequently, delivery of the check to Rio Lado discharged the liability of the insurance company on the policy. Since the insurance company subsequently settled with plaintiff, we need not consider whether plaintiff had a cause of action against it for negligently leaving plaintiff's name out of the check.

■■ The case turns on whether plaintiff had a property interest in the check in the hands of Rio Lado, or whether Rio Lado and Ward, as its general partner, had at most only a contractual duty to pay the proceeds over to plaintiff. A check, like other personal property, is subject to conversion. *Suddarth v. Poor*, 546 S.W.2d 138, 144 (Tex.Civ.App.—Tyler 1977, writ ref'd n. r. e.); *Samuels v. A. P. Mitchell Auto Co.*,

262 S.W. 825, 826 (Tex.Civ.App.—San Antonio 1924, writ dism'd). Did Rio Lado have an obligation to deliver that particular check to plaintiff, or did it have only an indebtedness to plaintiff in the amount of the check? We hold that Rio Lado had the obligation to deliver that particular check because under the provisions of the policy, to which both Rio Lado and plaintiff were parties, it received the check from the insured company as plaintiff's agent. Plaintiff was a named insured in the policy to the extent that its interest appeared. There is no question that plaintiff's interest appeared to the extent of plaintiff's expenses for repairing the water damage on the apartment project under construction. Those particular expenses were the basis for the claim which resulted in issuance of the check. Consequently, plaintiff's interest was paramount to Rio Lado's interest. *Samuels v. A. P. Mitchell Auto Co.*, 262 S.W. 825, 826 (Tex.Civ.App.—San Antonio 1924, writ dism'd). Rio Lado recognized plaintiff's superior right to the check by expressly agreeing to endorse it in plaintiff's favor on issuance. Therefore, we hold that plaintiff was the owner of the check, even though not named in it, just as the cash would have been plaintiff's property if the insurance company had paid the amount of the claim to Rio Lado in cash. When Ward endorsed the check and delivered it to DeLay to apply on Rio Lado's debt, Ward exercised unauthorized and wrongful dominion and control over plaintiff's property. Consequently, the evidence supports the jury's finding that he was guilty of conversion. *Waisath v. Lack's Stores, Inc.*, 474 S.W.2d 444 (Tex.1971).

■ Likewise, we conclude that the finding of conversion by DeLay is supported by the evidence. The check was plaintiff's property, and regardless of whether DeLay converted it when he accepted it in satisfaction of Rio Lado's debt, he was guilty of conversion when he refused to deliver the proceeds to plaintiff on demand. When there is a demand and refusal, it makes no difference that possession may have originally been acquired by law-

ful means. *Johnson v. Lane*, 524 S.W.2d 361, 364 (Tex.Civ.App.—Dallas 1975, no writ); and *see Jones v. Hunt*, 74 Tex. 657, 12 S.W. 832 (1889).

### 2. Defendants' Standing to Attack Malice Findings

■ Both Ward and DeLay attack the jury's findings of malice and punitive damages on the ground that there is no evidence of malice. Plaintiff asserts that defendants have no standing to raise these no-evidence points because defendants did not raise them by objecting to the malice issues, by motions for judgment notwithstanding the verdict, or by motions to disregard the jury's answers to these issues, as required by such cases as *City of Austin v. Daniels*, 160 Tex. 628, 335 S.W.2d 753 (1960), and *Commercial Ins. Co. v. Puente*, 535 S.W.2d 948 (Tex.Civ.App.—Corpus Christi 1976, writ ref'd n. r. e.).

The record shows that the only manner in which defendants called the trial court's attention to their contention of no evidence to support the findings of malice was by assignments in their motions for new trial. Those assignments are sufficient to preserve their contentions for the purpose of obtaining a remand for a new trial. *Rosas v. Shafer*, 415 S.W.2d 889 (Tex.1967). In this situation, however, we are not authorized to render judgment disregarding the malice findings. We can only remand for a new trial. *Commercial Ins. Co. v. Puente, supra*; *Gillespey v. Sylvia*, 496 S.W.2d 234 (Tex.Civ.App.—El Paso 1973, no writ). For this purpose only, therefore, we consider the points asserting no evidence to support the findings of malice and the attending assessments of punitive damages.

### 3. Punitive Damages against Ward

■ Punitive damages are not recoverable, even for a wrongful act, unless the act complained of is malicious or wanton. *Ogle v. Craig*, 464 S.W.2d 95, 97 (Tex.1971). Ward contends that there is no evidence to support the jury's finding of malice on his part. He argues that Rio Lado had a claim against plaintiff Shriro Corporation for la-

tent defects in the apartment project and that he was entitled to offset that claim against plaintiff's claim for the water damage, or, at least, that he believed in good faith that he was entitled to such an offset. Moreover, Ward asserts that since David Shriro, who was president of Shriro Corporation, was also a general partner of Rio Lado, he considered Rio Lado's debt to De-Lay to be Shriro's debt as well as his own.

■ We do not agree that these circumstances establish as a matter of law that Ward had a justifiable basis to believe that he could apply plaintiff's property to Rio Lado's debt. Since Ward, as Rio Lado's general partner, was holding the check for plaintiff, he was not entitled to seize it to satisfy Rio Lado's claim for latent defects. *Werkheiser-Polk Mill Co. v. Langford*, 51 Tex.Civ.App. 224, 115 S.W. 89, 91 (Austin 1908, no writ); and *see Jones v. Hunt*, 74 Tex. 657, 12 S.W. 832 (1889). The jury found that no latent defects existed, and this finding has not been attacked. Thus, the jury would have been warranted in inferring that Ward's claim of offset was not made in good faith. Neither did David Shriro's interest as a general partner justify Ward's application of the property of Shriro Corporation to Rio Lado's debt to DeLay. The corporation was a separate entity whose stockholders are not shown in this record. Moreover, the jury could have accepted Shriro's testimony that Ward had agreed to hold him harmless from any personal liability as a general partner of Rio Lado, though no written agreement was in evidence. In view of Ward's express agreement, as general partner of Rio Lado, to endorse the check in plaintiff's favor, the jury was justified in concluding that Ward knew that plaintiff was entitled to the check, but refused to deliver it to plaintiff in order to gain a more favorable position for pressing against plaintiff a doubtful claim for latent defects. Consequently, we cannot hold that there was no evidence to support the jury's finding of malice.

■ Ward asserts that the judgment against him for $20,000 punitive damages should be set aside as excessive because it is

shown by the evidence to be the result of passion, prejudice, or other improper motive. Shriro responds that the ratio of punitive to actual damages ($20,000 to $2,317.45) is within permissible limits. We conclude that the $20,000 figure is excessive. This conclusion is based not only on the high ratio of punitive to actual damages, but also on other circumstances in this case. Ward's act of applying the proceeds of the check to Rio Lado's debt, though without justification and in disregard of plaintiff's rights, was not so aggravated as to deserve this severe punishment. Even plaintiff did not seek such a heavy penalty until the verdict was returned. The petition alleges that punitive damages should be assessed against each defendant in the amount of $4,000. Only after the jury had assessed punitive damages of $20,000 against Ward and $7,500 against DeLay did plaintiff present a trial amendment raising its prayer to these amounts. Although the trial court may have had discretion to allow the trial amendment under such cases as *Santa Rosa Medical Center v. Robinson*, 560 S.W.2d 751, 759 (Tex.Civ.App.—San Antonio 1977, no writ), and *Irwin v. Whirley*, 538 S.W.2d 150, 152 (Tex.Civ.App.—Waco 1976, no writ), we may properly consider the amount plaintiff was seeking when the case was tried in determining excessiveness of punitive damages. We find that the award of $20,000 as punitive damages against Ward is excessive to the extent of $16,000.

### 4. Punitive Damages against DeLay

DeLay stands in a different position. We agree that there is no evidence to support the jury's finding of malice on his part. DeLay was the agent who procured the policy and advanced his own funds to pay the premium. Plaintiff argues that DeLay knew that plaintiff was one of the parties insured by the policy and knew that plaintiff was making a claim under the policy. Therefore, plaintiff insists that if DeLay did not know that plaintiff's name should have been in the draft, he should have known and that his failure to make further inquiry indicates gross indifference to plaintiff's rights.

We find no evidence that DeLay was guilty of gross indifference. Since he had advanced his own funds for the premium on the policy, he could have reasonably assumed that whatever might have been the relationship between plaintiff and Rio Lado, they would both recognize his claim to have the premium paid out of the proceeds. Thus, he received the check from the insurance company, obtained the endorsement of the named payees, and applied it to the indebtedness for the premium. When he received the demand from plaintiff, he contacted Ward and was assured that the check was properly applied to Rio Lado's debt. There is no evidence that he knew of Ward's written agreement to endorse the check in favor of plaintiff, or that he knew that Rio Lado, as plaintiff's agent, was not authorized to deliver the check to him. His failure to make an inquiry that would have disclosed these facts does not establish such a wanton or malicious act as to render him liable for punitive damages under the standard established by *Ogle v. Craig*, 464 S.W.2d 95, 97 (Tex.1971). *See also Barfield v. Brogdon*, 560 S.W.2d 787, 791 (Tex.Civ.App.—Amarillo 1978, writ ref'd n. r. e.).

### 5. Judgment

Because of the lack of evidence to support the findings of malice on the part of DeLay and because of the excessiveness of the damages against Ward, the judgment is reversed and the cause is remanded for a new trial. However, if within fifteen days from this date plaintiff files a remittitur of the punitive damages awarded against DeLay, the judgment for actual damages against him will be affirmed, and if within the same time, plaintiff files a remittitur of the amount of punitive damages awarded against Ward in excess of $4,000, the judgment against him will be affirmed for the actual damages and punitive damages in that amount. *See Clements v. Withers*, 437 S.W.2d 818, 822 (Tex.1969).

Affirmed on condition of remittitur; otherwise reversed and remanded.