**K–MART CORPORATION STORE NO. 7441 and K-Mart Corporation, Appellant,**

v.

**Billie Reba TROTTI, Appellee.**

**No. 01–83–00701–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 2, 1984.

Rehearing Denied Sept. 13, 1984.

Otto D. Hewitt, III, McLeod, Alexander, Powel & Apffel, James L. Ware, McLeod, Alexander, Powel & Apffel, James L. Anthony, McLeod, Alexander, Powel & Apffel, Galveston, for appellant.

Alton C. Todd, Brown, Todd, Hagood & Davenport, Alvin, for appellee.

Before EVANS, C.J., and COHEN and BULLOCK, JJ.

## OPINION

BULLOCK, Justice.

K-Mart Corporation appeals from a judgment awarding the appellee, Trotti, $8,000.00 in actual damages and $100,000.00 in exemplary damages for invasion of privacy.

We reverse and remand.

The appellee was an employee in the hosiery department at the appellants' store number 7441. Her supervisors had never indicated any dissatisfaction with her work nor any suspicion of her honesty.

The appellants provided their employees with lockers for the storage of personal effects during working hours. There was no assignment of any given locker to any individual employee. The employees could, on request, receive locks for the lockers from the appellants, and if the appellants provided the lock to an employee they would keep either a copy of the lock's combination or a master key for padlocks. Testimony indicated that there was some problem in providing a sufficient number of locks to employees, and, as a result, the store's administrative personnel permitted employees to purchase and use their own

locks on the lockers, but in these instances, the appellants did not require the employee to provide the manager with either a combination or duplicate key. The appellee, with appellants' knowledge, used one of these lockers and provided her own combination lock.

On October 31, 1981, the appellee placed her purse in her locker when she arrived for work. She testified that she snapped the lock closed and then pulled on it to make sure it was locked. When she returned to her locker during her afternoon break, she discovered the lock hanging open. Searching through her locker, the appellee further discovered her personal items in her purse in considerable disorder. Nothing was missing from either the locker or the purse. The store manager testified that, in the company of three junior administrators at the store, he had that afternoon searched the lockers because of a suspicion raised by the appellants' security personnel that an unidentified employee, not the appellee, had stolen a watch. The manager and his assistants were also searching for missing price-marking guns. The appellee further testified that, as she left the employee's locker area after discovering her locker open, she heard the manager suggest to his assistants, "Let's get busy again." The manager testified that none of the parties searched through employees' personal effects.

The appellee approached the manager later that day and asked if he had searched employees' lockers and/or her purse. The manager initially denied either kind of search and maintained this denial for approximately one month. At that time, the manager then admitted having searched the employees' lockers and further mentioned that they had, in fact, searched the appellee's purse, later saying that he meant that they had searched only her locker and not her purse.

The manager testified that during the initial hiring interviews, all prospective employees received verbal notification from personnel supervisors that it was the appellants' policy to conduct ingress-egress searches of employees and also to conduct unannounced searches of lockers. A personnel supervisor and an assistant manager, however, testified that, although locker searches did regularly occur, the personnel supervisors did not apprise prospective employees of this policy.

The appellants present twenty-two points of error which form the following general categories:

1) That the trial court abused its discretion by improperly defining "invasion of privacy" to the jury (Points of Error 1–4).

2) That no evidence, or insufficient evidence, exists to support the jury's verdict regarding invasion of privacy (Point of Error 5).

3) That the trial court abused its discretion by refusing to instruct the jury about causation (Points of Error 18–21).

4) That the trial court improperly refused to allow the jury to consider whether the appellee had suffered any actual injury (Point of Error 15).

5) That the trial court abused its discretion in instructing the jury relative to the issue of mental anguish (Points of Error 6–10).

6) That no evidence, or insufficient evidence, exists to support the jury's award of exemplary damages (Points of Error 11–14).

7) That the award of exemplary damages was excessive (Points of Error 16–17).

8) That the cumulative effect of the foregoing twenty-one points of error was the rendition of an improper judgment (Point of Error 22).

The fundamental and basic right to be left alone constitutes the essence of the right to privacy.

> The right of privacy has been defined as the right of an individual to be left alone, to live a life of seclusion, to be free from unwarranted publicity.

*Billings v. Atkinson,* 489 S.W.2d 858, 859 (Tex.1973). This right to privacy is so important that the United States Supreme Court has repeatedly deemed it to stem

implicitly from the Bill of Rights. Our State courts have long recognized a civil cause of action for the invasion of the right to privacy and have defined such an invasion in many ways: As an intentional intrusion upon the solitude or seclusion of another that is highly offensive to a reasonable person, *Gill v. Snow*, 644 S.W.2d 222, 224 (Tex.App.—Ft. Worth 1982, no writ); and as the right to be free from the wrongful intrusion into one's private activities in such manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities, *Industrial Foundation of the South v. Texas Industrial Accident Board*, 540 S.W.2d 668, 682 (Tex.1976); *Billings v. Atkinson, supra*, at 859.

The appellants requested the trial court to define an "invasion of privacy" as "the intentional intrusion upon the solitude or seclusion of another that is highly offensive to a reasonable person." This is the definition enunciated in *Gill v. Snow, supra*, and in the Restatement (Second) of Torts, Sec. 652B (1977). The court refused to include the part of the requested instruction, "... that is highly offensive to a reasonable person." The appellants argue that this refusal constituted an abuse of discretion because the Rules of Civil Procedure require such an instruction. Tex.R. Civ.P. 273 and 277. The appellee alleges that the record establishes that the intrusion was highly offensive as a matter of law, and that, therefore, the instruction was unnecessary.

■ The trial court, in submitting a case to a jury, should issue such explanatory instructions and definitions as will enable the jury, as trier of fact, to render a verdict. Tex.R.Civ.P. 277; *Fatheree v. Eddleman*, 363 S.W.2d 784, 786 (Tex.Civ.App. —Amarillo 1962, no writ). The trial court must explain to the jury any legal or technical terms. *Brandon v. Cooper*, 591 S.W.2d 553, 555 (Tex.Civ.App.—Amarillo 1979, writ ref'd n.r.e.). In issuing these explanatory instructions, however, the trial court is given wide discretion to determine the sufficiency of such explanations. Rule 277; *supra; McCane Sondock Detective*

*Agency v. Penland Distributors, Inc.*, 523 S.W.2d 62, 67 (Tex.Civ.App.—Houston [14th Dist.] 1975, no writ). In deciding whether there has been an abuse of such discretion, this court may not substitute its judgment for that of the trial court, and instead must decide only whether the trial court's action was arbitrary or unreasonable. *Landry v. Traveler's Insurance Co.*, 458 S.W.2d 649, 651 (Tex.1970). Therefore, we must determine if the omitted part of the requested explanation was so important to a fair determination of a crucial issue that the trial court's refusal to include that part was arbitrary or unreasonable.

■ The definition of "invasion of privacy" that the appellant requested is one widely and repeatedly accepted. Although the Texas Supreme Court has not adopted a verbatim rendition of this definition, it is clear that, in Texas, an actionable invasion of privacy by intrusion must consist of an unjustified intrusion of the plaintiff's solitude or seclusion of such magnitude as to cause an ordinary individual to feel severely offended, humiliated, or outraged. *Industrial Foundation of the South v. Texas Industrial Accident Board, supra; Billings v. Atkinson, supra*.

The appellants correctly point out that no Texas case yet reported has ever declined to include a requirement that the intrusion complained of be highly offensive to a reasonable person, and the appellee agrees with this statement. Nevertheless, the appellee urges that since the facts of this case established the highly objectionable nature of the intrusion as a matter of law, the requested instruction was unnecessary, and thus the trial court properly refused to include it.

We disagree with the appellee's contention. The record does indicate the appellee's outrage upon discovering the appellants' activities but fails to demonstrate that there could be no dispute as to the severity of the offensiveness of the intrusion, thereby making it impossible for us to conclude that the facts established the disputed portion of the instruction as a matter of law.

Moreover, we note that the result of accepting this contention would be to raise the legal theory of invasion of privacy from the realm of intentional torts into the sphere of strict liability. It would make any wrongful intrusion actionable, requiring a plaintiff to establish merely that the intrusion occurred and that the plaintiff did not consent to it. Because of the stern form of liability which already stems from an invasion of privacy, discussed, *infra*, accepting a definition of invasion of privacy which lacked a standard of high offensiveness would result in fundamentally unfair assessments against defendants who offended unreasonably sensitive plaintiffs, but whose transgressions would not realistically fill either an ordinary person or the general society with any sense of outrage. A business executive, for example, could find himself liable for entering an associate's office without express permission; so could a beautician who opened a co-worker's drawer in order to find some supplies needed for a customer.

We hold that the element of a highly offensive intrusion is a fundamental part of the definition of an invasion of privacy, and that the term "invasion of privacy" is a highly technical, legal term, requiring, under Rule 277, an explanation to the jury. In the instant case, the definition of an invasion of privacy necessarily required the inclusion of the requested standard of offensiveness.

We sustain the appellant's first four points of error, and, since we are ordering a new trial, we find it appropriate to examine the sufficiency of the evidence supporting the jury's finding.

 In reviewing a "no evidence" challenge, we must consider only the evidence and inferences from the evidence supporting the verdict, disregarding all evidence and inferences to the contrary. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965). In evaluating an "insufficient evidence" challenge, we must review the record as a whole, in order to determine whether the weight of that record supports the verdict. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951).

 The lockers undisputably were the appellants' property, and in their unlocked state, a jury could reasonably infer that those lockers were subject to legitimate, reasonable searches by the appellants. This would also be true where the employee used a lock provided by the appellants, because in retaining the lock's combination or master key, it could be inferred that the appellants manifested an interest both in maintaining control over the locker and in conducting legitimate, reasonable searches. Where, as in the instant case, however, the employee purchases and uses his own lock on the lockers, with the employer's knowledge, the fact finder is justified in concluding that the employee manifested, and the employer recognized, an expectation that the locker and its contents would be free from intrusion and interference.

In the present case, there is evidence that the appellee locked the locker with her own lock; that when the appellee returned from a break, the lock was lying open; that upon searching her locker, the appellee discovered that someone had rifled her purse; that the appellants' managerial personnel initially denied making the search but subsequently admitted searching her locker and her purse. We find this is far more evidence than a "mere scintilla," and we hold that there is some evidence to support the jury's finding.

As to the "insufficiency" point, after examining the record as a whole, we find it indicates all of the above. The appellee remembers having locked the locker and having seen the lock closed before starting work that day. The record indicates that the searching personnel denied having gone through any employee's purses, yet nothing in the record directly challenges the appellee's testimony as to the disruption of her personal effects inside her purse, and, therefore, the jury could make a reasonable inference that the managerial personnel had, in fact, gone through her personal effects. The record also establishes that other employees knew these

searches were going on. The store manager testified that all employees received notification of these sporadic searches during their hiring interviews; however, two administrators, including a former personnel supervisor, denied that employees ever received this notification. We hold that the weight of the evidence indicates that the appellants' employees came upon a locker with a lock provided by an employee, disregarded the appellee's demonstration of her expectation of privacy, opened and searched the locker, and probably opened and searched her purse as well; and, in so holding, we consider it is immaterial whether the appellee actually securely locked her locker or not. It is sufficient that an employee in this situation, by having placed a lock on the locker at the employee's own expense and with the appellants' consent, has demonstrated a legitimate expectation to a right of privacy in both the locker itself and those personal effects within it. We accordingly overrule appellants' fifth point of error.

■ The appellants argue that the trial court erred in failing to instruct the jury to consider questions of causation in fact and proximate cause, and, further, erred in failing to instruct the jury to consider whether the appellee actually suffered any injury at all.

The appellants urged the trial court to adopt concepts of negligence in submitting an intentional tort to the jury and now ask this court to require such concepts in all disputes involving an invasion of privacy. The appellants cite considerable authority applying negligence concepts to cases involving intentional civil assaults and batteries.

These concepts are inapplicable, and the appellants' authorities are distinguishable on two grounds. First, the circumstances of those assault and battery cases raised questions of causation not usually encountered in intentional torts. Here, however, there is no question that the appellants invaded the appellee's privacy by opening the locked locker and by opening and investigating her purse. This unwarranted invasion of privacy alone demonstrates that the single act of opening and inspecting the locker, and certainly the purse, was sufficient to justify the jury's findings. We overrule the appellant's eighteenth through twenty-first points of error.

The appellants further argue that any physical effects of the intrusion were merely effects stemming from an earlier health problem the appellee had suffered. The record does support these facts, and it would be reasonable to conclude that the unwarranted intrusion of the locker and purse at best exacerbated an earlier physical ailment. This contention, however, is immaterial in this kind of case.

■ The basis of a cause of action for invasion of privacy is that the defendant has violated the plaintiff's rights to be left alone. This intrusion itself is actionable, and the plaintiff can receive at least nominal damages for that actionable intrusion without demonstrating physical detriment. *Industrial Foundation of the South v. Texas Industrial Accident Board, supra,* at 682; *Billings v. Atkinson, supra,* at 860; *Trevino v. Southwestern Bell Telephone Co.,* 582 S.W.2d 582, 584 (Tex.Civ. App.—Corpus Christi 1979, no writ). The appellants' improper intrusion of an area where the appellee had manifested an expectation of privacy alone raised her right to recover. We overrule the appellants' fifteenth point of error.

Appellants' sixth through tenth points of error pertain to the trial court's instructions to the jury regarding mental anguish and comprise two basic arguments. The first is that the trial court improperly refused to submit the appellants' definition of "mental anguish" to the jury; the second, that the trial court improperly allowed the jury to consider mere embarrassment in determining the appellee's damages.

■ In evaluating the appellants' first argument under these points of error, we find that the trial court failed to act in accordance with Tex.R.Civ.P. 273 and 277, by failing to provide the jury with any definition of "mental anguish," despite a

requested definition offered by appellants. "Mental anguish" requires a plaintiff to show more than mere worry, anxiety, vexation, or anger. *Freedom Homes of Texas, Inc. v. Dickinson,* 598 S.W.2d 714, 718 (Tex.Civ.App.—Corpus Christi 1980, writ ref'd n.r.e.).

> The term "mental anguish" implies a relatively high degree of mental pain and distress. It is more than mere disappointment, anger, resentment, or embarrassment, although it may include all of these. It includes a mental sensation of pain resulting from such painful emotion as grief, severe disappointment, indignation, wounded pride, shame, despair and/or public humiliation.

*Trevino v. Southwestern Bell Telephone Co., supra,* at 584.

██ It is clear, therefore, that "mental anguish" is a technical, legal term, and that the trial court should have defined that term for the jury in accordance with Rule 277.

The special issue dealing with mental anguish reads:

> What sum of money, if paid now in cash, do you find from a preponderance of the evidence would fairly and reasonably compensate Billie Trotti for the damages she suffered from the occurrence in question?
>
> In answering this issue you shall take into account the following elements of damage and none other:
>
> (a) Mental suffering or anguish
>
> (b) Physical pain
>
> (c) Embarrassment
>
> You are to consider each element of damage separately, so as not to include damages for one element in any other element.
>
> Answer in dollars and cents.

██ We hold that this instruction was improper, because it allowed the jury to assess damages against the appellants for any embarrassment the appellee suffered from the intrusion. The foregoing cases make it clear that, while mental anguish and physical suffering are compensable,

mere embarrassment is not. In addition, the instruction clearly required the jury to consider embarrassment separately from mental anguish. We cannot, therefore, find that the instruction merely defined embarrassment as a factor or element of mental anguish, which would have been proper.

We sustain appellants' sixth through tenth points of error.

The jury awarded $8,000.00 as actual damages and $100,000.00 as exemplary damages to the appellee. The appellants contend that this award of exemplary damages was improper because: (1) no evidence, or insufficient evidence, exists of malice; and (2) the 12.5 to 1 ratio of exemplary to actual damages is excessive because it is disproportionate.

██ Any award of damages must have support in the record. *North Star Dodge Sales, Inc. v. Luna,* 653 S.W.2d 892 (Tex.App.—San Antonio 1983, writ granted). An award of exemplary damages will be improper where the defendant acted in good faith. *Gardner v. Jones,* 570 S.W.2d 198, 201 (Tex.Civ.App.—Houston [1st Dist.] 1978, no writ). A mere wrongful act is insufficient to justify the award of exemplary damages. *Ware v. Paxton,* 359 S.W.2d 897, 899 (Tex.1962), *First Security Bank & Trust Co. v. Roach,* 493 S.W.2d 612, 617 (Tex.Civ.App.—Dallas 1973, writ ref'd n.r.e.). An award of exemplary damages requires a preliminary finding that the defendant behaved maliciously or with wanton disregard for the plaintiff. *Ware v. Paxton, supra,* at 899; *Gardner v. Kerly,* 613 S.W.2d 795, 796 (Tex.Civ.App.— Houston [14th Dist.] 1981, no writ), *Ward v. Shriro Corp.,* 579 S.W.2d 257, 261 (Tex. Civ.App.—Dallas 1979, no writ). Malice is an unlawful act done intentionally and without justification or excuse. *Lone Star Steel Co. v. Wahl,* 636 S.W.2d 217, 222 (Tex.App.—Texarkana 1982, no writ).

The appellants argue that no malice exists in this case because: (1) the appellants acted correctly and lawfully in opening and searching the lockers; and (2) even if the appellants wrongfully searched the lockers,

they did so in a good faith belief that they had the right to do so. Neither of the appellants' allegations has merit.

First, the record establishes, and we have held herein, that the appellants' search of the appellee's locker and purse was wrongful. The mere suspicion either that another employee had stolen watches, or that unidentified employees may have stolen price-marking guns was insufficient to justify the appellants' search of appellee's locker and personal possessions without her consent. The record also demonstrates that the appellants lied to appellee and concealed the truth of their wrongful search for approximately one month.

The record indicates, particularly through the appellants' subsequent denial of their activities, that there was sufficient evidence from which the jury could reasonably conclude that the appellants acted with malicious disregard for both the appellee's rights of privacy and the rights of privacy of her co-workers. We find that there was sufficient evidence to support the jury's finding of malice.

It is the general rule in Texas that the amount of the award is uniquely within the jury's discretion. *Southwestern Investment Co. v. Neeley*, 452 S.W.2d 705, 707 (Tex.1970).

> [A]n appellate court should not substitute its verdict on damages for that of the jury unless the record indicates that the jury was influenced by passion, prejudice, improper motive, or something other than conscientious conviction.... The mere fact that a verdict is large is no indication of passion, prejudice, sympathy, or other circumstances not in evidence.

*International Harvester Co. v. Zavala*, 623 S.W.2d 699, 708 (Tex.Civ.App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.).

> Therefore, the question of damages, if not excessive, is properly left for the jury to determine.... [I]n the absence of a clear showing that passion, prejudice, or other improper matters influenced the jury, the amount assessed will

not be set aside in this court as excessive.

*Gonzales v. Southwestern Bell Telephone Co.*, 555 S.W.2d 219, 223 (Tex.Civ.App.—Corpus Christi 1977, no writ).

The appellants argue that the exemplary damages in the instant case are excessive because the ratio of exemplary damages to actual damages is 12.5 to 1. They cite several cases with the implicit conclusion that any ratio other than 3 to 1 creates a presumption of excessive damages. It is true that ratios are indicators which a court may consider in determining whether the jury's award was an excessive one; however, they are nothing more than indicators. A holistic view of the entire situation is necessary when determining the propriety of exemplary damages, a view that recognizes both the purpose of exemplary damages and the special considerations of the dispute at bar. *Alamo National Bank v. Kraus*, 616 S.W.2d 908 (Tex.1981).

Exemplary damages exist to promote the protection of an important public interest by making an example of the defendant for particular wrongful, malicious conduct. In determining whether the award will effectively yet fairly make such an example of a wrongful defendant, we should consider many factors. These factors include, but may encompass more than: (1) the nature of the wrong; (2) the character of the conduct involved; (3) the degree of the wrongdoer's culpability; (4) the situation and sensibilities of the parties; and (5) the extent to which the defendant's conduct offends a public sense of justice and propriety. *Maxey v. Freightliner Corp.*, 665 F.2d 1367, 1377 (5th Cir.1982); *Southwestern Investment Co. v. Neeley, supra*, at 707; *First Security Bank & Trust Co. v. Roach, supra*, at 617.

The appellants intentionally intruded upon an area where the appellee had a legitimate expectation of privacy. The evidence supports a further finding that the appellants wrongfully intruded upon appellee's personal property. The conduct of this inspection, and the appellants' subsequent denial and ultimate admission support the conclusion that they were aware

that their actions constituted a covert intrusion. The appellants clearly made this wrongful intrusion with neither the appellee's permission nor justifiable suspicion that the appellee had stolen any store inventory. Sufficient factors exist to enable this court to conclude that the jury's award of exemplary damages was the result of proper motivations. We disagree with the appellant that any set ratio of exemplary to actual damages constitutes a ceiling beyond which a greater award would be excessive, and even were we to agree with appellants, we do not find that the exemplary damages in the instant case exceed that ceiling.

The evidence supports the jury's award of exemplary damages from the factors cited. There is no evidence to support a conclusion that the jury acted as a result of passion or prejudice. We overrule the appellants' eleventh through fourteenth and sixteenth and seventeenth points of error.

The appellants claim in their last point of error that the cumulative effect of their foregoing twenty-one complaints is that they received an unfair trial. While we have noted individual errors, *supra*, we do not find such a cumulative effect to have occurred. We overrule the appellants' twenty second and last point of error.

The judgment is reversed, and the case is remanded for new trial.